**Nos. 2022-1884, -1886**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

WISCONSIN ALUMNI RESEARCH FOUNDATION,

*Plaintiff-Appellant,*

*v.*

APPLE INC.,

*Defendant-Appellee.*

On Appeal from the United States District Court for the Western District of Wisconsin in Case Nos. 3:14-cv-00062-wmc and 3:15-cv-00621-wmc, Judge William M. Conley

## BRIEF FOR DEFENDANT-APPELLEE APPLE INC.


STEVEN J. HORN
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6432

WILLIAM F. LEE
LAUREN B. FLETCHER
ANDREW J. DANFORD
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Attorneys for Defendant-Appellee Apple Inc.*


December 1, 2022

## PATENT CLAIMS AT ISSUE

Claim 1 of U.S. Patent No. 5,781,752 provides:

> In a processor capable of executing program instructions in an execution order differing from their program order, the processor further having a data speculation circuit for detecting data dependence between instructions and detecting a mis-speculation where a data consuming instruction dependent for its data on a data producing instruction of earlier program order, is in fact executed before the data producing instruction, a data speculation decision circuit comprising:
>
> a) a predictor receiving a mis-speculation indication from the data speculation circuit to produce a prediction associated with the particular data consuming instruction and based on the mis-speculation indication; and
>
> b) a prediction threshold detector preventing data speculation for instructions having a prediction within a predetermined range.

Appx132.

## CERTIFICATE OF INTEREST

Counsel for Defendant-Appellee Apple Inc. certifies the following:

**1. Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

Apple Inc.

**2. Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

**3. Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4. Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

WILMER CUTLER PICKERING HALE AND DORR LLP: Bryan S. Conley (former), James M. Dowd, Felicia H. Ellsworth, Richard Goldenberg, Derek A. Gosma, Matthew J. Hawkinson (former), Jordan Hirsch, Andrea J. W. Jeffries (former), Janine M. Lopez (former), David C. Marcus, David Peer (former), James L. Quarles, Mark D. Selwyn, Michael Silhasek (former), Keith Syverson (former), Gregory P. Teran (former)

CETRA LAW FIRM, LLC: Catherine Cetrangolo

GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP: Michael Pieja

**5. Related Cases**. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

None.

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: December 1, 2022

/s/William F. Lee

WILLIAM F. LEE
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

# TABLE OF CONTENTS

Page

PATENT CLAIMS AT ISSUE

CERTIFICATE OF INTEREST ....... i

TABLE OF AUTHORITIES ....... vi

STATEMENT OF RELATED CASES ....... 1

INTRODUCTION ....... 1

STATEMENT OF ISSUES ....... 3

STATEMENT OF FACTS ....... 3

A. WARF's Patent ....... 3

B. WARF's First Lawsuit ("*WARF I*") ....... 4

1. WARF's abandonment of its DOE theory ....... 4

2. Apple's non-infringement defense based on the "particular" limitations ....... 6

C. WARF's Second Lawsuit ("*WARF II*") ....... 7

1. The parties' agreement that the A9/A10 products were essentially the same as the A7/A8 products ....... 8

2. WARF's agreement that infringement by the A9/A10 products would rise or fall with the outcome of *WARF I* ....... 8

D. This Court's Reversal On Infringement In *WARF I* ....... 10

E. Post-Appeal District Court Proceedings ....... 11

SUMMARY OF ARGUMENT ....... 15

ARGUMENT ....... 20

I. STANDARD OF REVIEW....................20

II. THE *WARF I* JUDGMENT SHOULD BE AFFIRMED BECAUSE WARF WAIVED ITS DOE THEORY. ....................21

A. WARF Waived Any Theory Of Infringement Under The DOE....................21

B. This Court's Prior Opinion And Mandate Foreclose WARF's Request For A New Trial On DOE....................22

C. WARF Cannot Undo Its Waiver Or Avoid This Court's Prior Mandate....................24

1. This Court did not adopt a new claim construction....................24

2. *Exxon* does not provide any basis for a new trial on infringement....................28

III. THE *WARF II* JUDGMENT SHOULD BE AFFIRMED BASED ON PRECLUSION PRINCIPLES. ....................29

A. *Nystrom* Precludes Asserting DOE Against Next-Generation Products In A Second Suit After Waiving DOE In A First Suit....................29

B. Claim Preclusion Bars WARF's Infringement Claims In *WARF II*....................33

1. Apple's A9/A10 products are "essentially the same" as the A7/A8 products accused in *WARF I*....................34

2. WARF's infringement claims against Apple's A9/A10 products "could have been brought" in *WARF I*....................37

C. Issue Preclusion Bars WARF's Infringement Claims In *WARF II*....................41

D. The *Kessler* Doctrine Provides An Alternative Ground For Affirmance in *WARF II*. ....................46

IV. THE DISTRICT COURT CORRECTLY FOUND THERE CAN BE NO DOE INFRINGEMENT AS A MATTER OF LAW BECAUSE THAT WOULD VITIATE THE "PARTICULAR" LIMITATION. ........................................50

V. JUDICIAL ESTOPPEL PROVIDES AN ALTERNATIVE GROUND FOR AFFIRMANCE IN *WARF I* AND *WARF II*. ........................................54

A. Judicial Estoppel Bars WARF From Resurrecting Its Abandoned DOE Theory In *WARF I*. ........................................55

B. Judicial Estoppel Also Bars WARF From Litigating Infringement In *WARF II*. ........................................56

CONCLUSION ........................................58

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

## CASES

Page(s)

*Acumed LLC v. Stryker Corp.*,
525 F.3d 1319 (Fed. Cir. 2008) ....................33, 34

*Adair v. Sherman*,
230 F.3d 890 (7th Cir. 2000) ....................41

*American Calcar, Inc. v. American Honda Motor Co.*,
651 F.3d 1318 (Fed. Cir. 2011) ....................51

*ArcelorMittal Atlantique et Lorraine v. AK Steel Corp.*,
908 F.3d 1267 (Fed. Cir. 2018) ....................41

*ArcelorMittal France v. AK Steel Corp.*,
700 F.3d 1314 (Fed. Cir. 2012) ....................28

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
672 F.3d 1335 (Fed. Cir. 2012) ....................32, 38, 39, 40, 44

*Aspex Eyewear, Inc. v. Zenni Optical Inc.*,
713 F.3d 1377 (Fed. Cir. 2013) ....................42

*Bernstein v. Bankert*,
733 F.3d 190 (7th Cir. 2013) ....................20

*Boss Control, Inc. v. Bombardier Inc.*,
410 F.3d 1372 (Fed. Cir. 2005) ....................21, 22

*Brain Life, LLC v. Elekta Inc.*,
746 F.3d 1045 (Fed. Cir. 2014) ....................*passim*

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*,
576 F.3d 1348 (Fed. Cir. 2009) ....................24

*Carmody v. Board of Trustees of University of Illinois*,
893 F.3d 397 (7th Cir. 2018) ....................23

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
469 F.3d 1005 (Fed. Cir. 2006) ....................52

*Exxon Chemical Patents, Inc. v. Lubrizol Corporation*,
137 F.3d 1475 (Fed. Cir. 1998) ....................12, 28, 29

*Foster v. Hallco Manufacturing Co.*,
947 F.2d 469 (Fed. Cir. 1991) ....................32, 34

*Gabb v. Wexford Health Sources, Inc.*,
945 F.3d 1027 (7th Cir. 2019) ....................54

*Galderma Laboratories, L.P. v. Amneal Pharmaceuticals, LLC*,
337 F. Supp. 3d 371 (D. Del. 2018)....................17, 45, 46

*Galderma Laboratories, L.P. v. Amneal Pharmaceuticals, LLC*,
806 F. App'x 1007 (Fed. Cir. 2020) (nonprecedential)....................45

*Goodpaster v. City of Indianapolis*,
736 F.3d 1060 (7th Cir. 2013) ....................20

*Grochocinski v. Mayer Brown Roe & Maw, LLP*,
719 F.3d 785 (7th Cir. 2013) .................... 20-21

*Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*,
2010 WL 4448824 (D. Haw. Oct. 29, 2010), *aff'd*, 424 F. App'x
961 (Fed. Cir. 2011)....................38

*Harris Corp. v. Ericsson, Inc.*,
417 F.3d 1241 (Fed. Cir. 2005) ....................20

*In re Airadigm Communications, Inc.*,
616 F.3d 642 (7th Cir. 2010) ....................55

*In re Cassidy*,
892 F.2d 637 (7th Cir. 1990) ....................56, 58

*In re PersonalWeb Technologies LLC*,
961 F.3d 1365 (Fed. Cir. 2020) ....................38, 47, 48

*Jones v. Cummings*,
998 F.3d 782 (7th Cir. 2021) ....................46

*Kessler v. Eldred*,
206 U.S. 285 (1907)....................17, 49

*Koito Manufacturing Co. v. Turn-Key-Tech, LLC*,
381 F.3d 1142 (Fed. Cir. 2004) ....................................................................42

*Laguna Construction Co. v. Carter*,
828 F.3d 1364 (Fed. Cir. 2016) ....................................................................21

*Laitram Corp. v. NEC Corp.*,
115 F.3d 947 (Fed. Cir. 1997) ......................................................................20

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
851 F.3d 1275 (Fed. Cir. 2017) ....................................................................38

*MGA, Inc. v. General Motors Corp.*,
827 F.2d 729 (Fed. Cir. 1987) ......................................................................49

*Minnesota Mining & Manufacturing Co. v. Chemque, Inc.*,
303 F.3d 1294 (Fed. Cir. 2002) ....................................................................20

*Montana v. United States*,
440 U.S. 147 (1979)......................................................................................33

*Moore U.S.A., Inc. v. Standard Register Co.*,
229 F.3d 1091 (Fed. Cir. 2000) ....................................................................51

*New Hampshire v. Maine*,
532 U.S. 742 (2001)......................................................................21, 37, 55

*Nystrom v. Trex Co.*,
No. 2:01CV905, 2006 WL 208591 (E.D. Va. Jan. 25, 2006) ............................44

*Nystrom v. Trex Co.*,
424 F.3d 1136 (Fed. Cir. 2005) ....................................................................30

*Nystrom v. Trex Co.*,
580 F.3d 1281 (Fed. Cir. 2009) .............................................................*passim*

*Orion Technology, Inc. v. United States*,
704 F.3d 1344 (Fed. Cir. 2013) ..............................................................46, 55

*Pandrol USA, LP v. Airboss Railway Products, Inc.*,
424 F.3d 1161 (Fed. Cir. 2005) ....................................................................22

*Parklane Hosiery Co. v. Shore*,
439 U.S. 322 (1979)....................46

*Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*,
843 F.3d 1315 (Fed. Cir. 2016)....................51

*Promega Corp. v. Life Technologies Corp.*,
875 F.3d 651 (Fed. Cir. 2017)....................23

*Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co.*,
232 U.S. 413 (1914)....................48

*Shaver v. F.W. Woolworth Co.*,
840 F.2d 1361 (7th Cir. 1988)....................33

*Southern Illinois Riverboat Casino Cruises, Inc. v. Triangle Insulation & Sheet Metal Co.*,
302 F.3d 667 (7th Cir. 2002)....................54

*SpeedTrack, Inc. v. Office Depot, Inc.*,
791 F.3d 1317 (Fed. Cir. 2015)....................47, 49

*Taylor v. Sturgell*,
553 U.S. 880 (2008)....................46

*Tranzact Technologies, Ltd. v. Evergreen Partners, Ltd.*,
366 F.3d 542 (7th Cir. 2004)....................54

*Tronzo v. Biomet, Inc.*,
156 F.3d 1154 (Fed. Cir. 1998)....................52

*Trustees in Bankruptcy of North American Rubber Thread Co. v. United States*,
593 F.3d 1346 (Fed. Cir. 2010)....................58

*United States v. Hible*,
700 F.3d 958 (7th Cir. 2012)....................21

*United States v. Olano*,
507 U.S. 725 (1993)....................21

*United States v. Ziegler Bolt & Parts Co.*,
111 F.3d 878 (Fed. Cir. 1997)....................20

*ViaTech Technologies Inc. v. Microsoft Corp.*,
733 F. App'x 542 (Fed. Cir. 2018) (nonprecedential)........................................22

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*,
520 U.S. 17 (1997)..........................................................................................52

*West Side Salvage, Inc. v. RSUI Indemnity Co.*,
878 F.3d 219 (7th Cir. 2017) ............................................................................55

*Wisconsin Alumni Research Foundation v. Apple Inc.*,
905 F.3d 1341 (Fed. Cir. 2018) ...................................................................*passim*

*Xiaohua Huang v. Huawei Technologies Co.*,
787 F. App'x 723 (Fed. Cir. 2019) (nonprecedential)............................ 40-41, 47

## RULES

Fed. R. Civ. P. 50 ..............................................................................................27

## OTHER AUTHORITIES

Restatement (Second) of Judgments § 27 ..............................................................43

## STATEMENT OF RELATED CASES

WARF's present appeal arises from two related district court cases: *Wisconsin Alumni Research Foundation v. Apple Inc.*, No. 14-cv-062-wmc (W.D. Wis.) ("*WARF I*"); and *Wisconsin Alumni Research Foundation v. Apple Inc.*, No. 15-cv-621-wmc (W.D. Wis.) ("*WARF II*"). This Court previously decided an appeal in *WARF I* in which it reversed the district court's infringement judgment entered against Apple. *Wisconsin Alumni Research Foundation v. Apple Inc.*, No. 2017-2265, 905 F.3d 1341 (Fed. Cir. Sept. 28, 2018) (Prost, C.J., joined by Bryson & O'Malley, JJ.). Apple's motion for costs in *WARF I* is currently pending before the district court. *See WARF I*, Dkts. 807-809, 819-820. Apple is unaware of any other case pending in this Court or any other court or agency that will directly affect or be directly affected by the Court's decision in this appeal.

## INTRODUCTION

This is the second time that this case has come before this Court. During the prior appeal, this Court held that Apple did not literally infringe WARF's patent and recognized that WARF had abandoned its theory of infringement under the doctrine of equivalents ("DOE"). Under well-established principles of waiver, preclusion, and estoppel, WARF cannot continue to assert infringement of the same patent by the same feature in Apple's products.

Yet WARF has continued to do exactly that. After the prior appeal, WARF filed a motion with the district court seeking to resurrect its previously abandoned DOE theory in *WARF I*. WARF also sought to pursue a follow-on case against later-generation Apple products containing the same feature in *WARF II*.

The district court correctly held that there are multiple reasons why WARF may not continue to litigate its infringement claims against Apple. The court recognized that WARF waived its DOE theory in *WARF I*, having already made the strategic choice to abandon DOE before trial. The court then ruled that WARF is precluded under this Court's precedents from raising its DOE theory against later-generation Apple products that contain the same accused feature in *WARF II*. And for both cases, the court further rejected WARF's DOE theory on the merits as contrary to this Court's decision from the first appeal. Each of those decisions was correct and dictated by applicable precedent.

In the current appeal, WARF ignores or mischaracterizes the history of this case in an attempt to manufacture disputes where there are none. WARF is bound by the consequences of its own strategic decisions, and its long-abandoned DOE theory is now foreclosed both procedurally and substantively. The judgments should be affirmed.

## STATEMENT OF ISSUES

1. Whether the district court acted within its discretion in finding that WARF voluntarily abandoned its DOE theory in *WARF I*, as this Court previously found and which is therefore also the law of this case.

2. Whether the district court correctly concluded that WARF is precluded from asserting its DOE theory in *WARF II* where the accused products are "essentially the same" as those accused in *WARF I*.

3. Whether the district court correctly concluded that there can be no infringement under the DOE as a matter of law because, in light of this Court's opinion in the previous appeal, any finding of DOE infringement would vitiate the "particular" claim limitations.

4. As an alternative ground of affirmance, whether WARF is judicially estopped from asserting its DOE theory in both *WARF I* and *WARF II*.

## STATEMENT OF FACTS

### A. WARF's Patent

These cases involve U.S. Patent No. 5,781,752 ("the '752 patent"), which claims a "data speculation decision circuit" in a computer processor that tracks certain information about program instructions. Appx132-133. Among other things,

all asserted claims require a "prediction" associated with a "particular" load instruction. Appx133.[1] The '752 patent expired on December 26, 2016.

### B. WARF's First Lawsuit ("*WARF I*")

WARF initially sued Apple in January 2014 and accused Apple's iPhones and iPads containing the A7, A8, and A8X chips ("the A7/A8 products") of infringing the '752 patent. *WARF I*, 905 F.3d at 1345-1346. WARF identified Apple's Load-Store Dependency Predictor ("LSD Predictor") as the allegedly infringing feature. *Id.* at 1346.

#### 1. WARF's abandonment of its DOE theory

Throughout discovery, WARF alleged literal infringement and infringement under the DOE as alternative theories of infringement. Appx2; Appx6003; Appx6711. Shortly before trial, WARF moved to exclude evidence concerning Apple's own patent on the LSD Predictor from the trial's liability phase. Appx2; Appx6793-6807. Apple opposed, explaining that Apple's patent (which issued over WARF's '752 patent) was relevant to rebutting WARF's DOE theory. Appx2; Appx6810-6811; Appx6814-6816. In response, WARF offered that in exchange for excluding evidence of Apple's patent, it would "drop doctrine of equivalents and make no doctrine of equivalents argument whatsoever at trial[.]" Appx2-3 (quoting

[1] A "load" instruction reads data from a given location in memory. *WARF I*, 905 F.3d at 1344. The '752 patent refers to load instructions as "data consuming" instructions. *Id.* at 1345 n.1.

Appx6824). Apple relied upon WARF's representation and agreed that it would not offer evidence of its own patent "in the liability phase if the doctrine of equivalents is not in issue." Appx3; Appx6838.

The district court subsequently denied WARF's motion, ruling that Apple's patent would have been admissible during the trial's liability phase. Appx15289. In the same order, the court also recognized that the parties had reached a compromise:

> WARF has agreed to "drop doctrine of equivalence and make no doctrine of equivalents arguments whatsoever at trial" if [Apple's patent] is allowed into evidence. In kind, Apple has agreed it will not offer [Apple's patent] for any reason during the liability phase of trial "if the doctrine of equivalents is not in issue."

Appx15290 (citations omitted). The court therefore ordered that "[b]y agreement of the parties neither side may introduce evidence or argument regarding [Apple's patent] … during the liability phase of trial." Appx15294. WARF confirmed in writing that "WARF will not raise or mention doctrine of equivalents, and Apple will not raise or mention [Apple's patent] in the liability phase." Appx6868; *see* Appx3.

At the end of the trial, Apple moved for JMOL on WARF's abandoned DOE theory. Appx6860. The district court denied Apple's motion because WARF had abandoned DOE before trial, but "agree[d] that any attempt by WARF to resurrect abandoned claims would be futile in light of preclusion rules." Appx15322.

### 2. Apple's non-infringement defense based on the "particular" limitations

Instead of identifying a load instruction by its full address, Apple's accused LSD Predictor uses a "hashing" algorithm that creates a 12-bit load tag using certain information about the load instruction. *WARF I*, 905 F.3d at 1346. As a result of this hashing, each load tag used by the LSD Predictor "represent[s] multiple load instructions." *Id.* at 1350. Months before trial, Apple disclosed its expert's opinion that the accused products do not infringe because, among other reasons, Apple's hashed load tags associate predictions with groups of load instructions, rather than with a "particular" load instruction as the asserted claims require. Appx6112-6122(¶¶241-261); *see* Appx3-4.

During trial, WARF moved to exclude this non-infringement defense as purportedly inconsistent with the "plain and ordinary meaning" of "particular." Appx6841. The district court denied WARF's motion, holding that Apple's non-infringement argument was consistent with the plain meaning of "particular." Appx15297-15298; *see* Appx4. As the court explained, the plain meaning of claim 1 describes "a prediction associated with a *single* load instruction." Appx15298.[2]

Because WARF had already presented trial testimony that was contrary to the plain meaning of "particular," Apple sought a curative instruction on that term's

[2] Emphasis is added unless indicated otherwise.

plain meaning. Appx15300-15301. The court denied Apple's request, explaining that it had already "sided with Apple in its request that the term simply be given its plain and ordinary meaning" and, "[a]s such, Apple has waived any request to now insert a construction of the term into the closing jury instructions." Appx15302. The court accordingly instructed the jury to apply the plain and ordinary meaning for claim terms, including the "particular" term, for which it had provided no other construction. Appx15309; *see* Appx4-5.

After the jury returned a verdict finding literal infringement, Apple moved for JMOL on the basis that no reasonable jury could have found literal infringement under the plain meaning of "particular." Appx6862-6864; Appx6888-6892. The district court denied that motion. Appx15333-15334.

### C. WARF's Second Lawsuit ("*WARF II*")

WARF sued Apple again in September 2015, shortly before the *WARF I* trial. In that second case, WARF accused Apple's iPhones and iPads containing the A9, A9X, and A10 chips ("the A9/A10 products") of infringing the '752 patent. Appx6; Appx1012-1013(¶¶19-21); Appx8010-8011(¶¶18-22). WARF again pointed to Apple's LSD Predictor as the allegedly infringing feature. Appx6; Appx8010-8011(¶¶18-21).

### 1. The parties' agreement that the A9/A10 products were essentially the same as the A7/A8 products

As the district court found, there was "no dispute" below that the A9/A10 products accused in *WARF II*—which continued to use Apple's LSD Predictor with hashed load tags—were the same as the A7/A8 products accused in *WARF I* with respect to infringement. Appx6. Indeed, WARF repeatedly asserted that the A9/A10 products used "the same infringing LSD Predictor design" as the A7/A8 products. Appx7205-7207; *see* Appx7005-7006; Appx7008; Appx7013-7014; Appx6010; Appx15062. And during post-trial proceedings in *WARF I*, Apple confirmed that the A9/A10 products were "not more than colorably different" from the A7/A8 products with respect to infringement. Appx7127; Appx7141; *see* Appx7320-7324(¶¶1-12). Apple had also made the source code for its later-generation products available for WARF to inspect, which WARF did on several occasions. Appx7303-7308 (emails reflecting WARF's review of this code). And in response to the district court's order (Appx15360-15361), Apple produced sales information concerning those later-generation products in *WARF I* through the expiration of the '752 patent.

### 2. WARF's agreement that infringement by the A9/A10 products would rise or fall with the outcome of *WARF I*

Although Apple had opposed WARF's efforts to obtain discovery on the A9/A10 products in *WARF I* before they were released commercially (Appx15076-

15101), Apple sold all accused A9/A10 products before the district court entered final judgment in *WARF I*. Appx7046; Appx7149 n.1. During post-trial proceedings in *WARF I*, Apple therefore proposed incorporating the A9/A10 products into that case because doing so would "eliminat[e] the need to pursue [*WARF II*] further." Appx7045-7046; Appx7127 & n.25; Appx7141; *see* Appx6. In addressing supplemental damages and ongoing royalties in *WARF I*, the district court similarly proposed including the A9/A10 products in the *WARF I* judgment. Appx15362-15363; Appx6.

In response, WARF stated that "[t]he parties appear to agree with the Court's proposal in substance." Appx7129. WARF explained that there was "broad agreement on substance" between the parties that "the A9, A9X, and A10 chips are not more than colorably different from the A7, A8, and A8X with respect to the accused feature" and that "the same ongoing royalty rate … will apply to all infringing processors after the date of the judgment." Appx7129-7130. WARF asserted, however, that it would need additional discovery (unrelated to the technical features of the LSD Predictor) to calculate the number of royalty-bearing units for the A9/A10 products due to "complexities" raised by the '752 patent's expiration. Appx7130-7131; Appx7135-7139. WARF thus proposed that "the most efficient path forward" would be to keep *WARF II* as a separate case and postpone an accounting for the A9/A10 products until after the *WARF I* appeal. Appx7130; *see*

Appx7. WARF represented that that approach would "greatly conserve the resources of the parties and the [c]ourt" because such an accounting would be unnecessary if Apple prevailed on appeal in *WARF I*. Appx7130-7131; Appx7138-7139; *see* Appx7.

Apple agreed not to oppose based upon WARF's representation that there would be no need to perform an accounting of the A9/A10 products if Apple prevailed on appeal (Appx7155), and the district court deferred any accounting of the A9/A10 products until after the *WARF I* appeal (Appx7157-7158; Appx7). The court then stayed *WARF II* pending the outcome of the *WARF I* appeal, recognizing that "a final judgment in *WARF I* will likely have preclusive effect" in *WARF II*. Appx8003; *see* Appx15457; Appx7.

### D. This Court's Reversal On Infringement In *WARF I*

On appeal, this Court reversed the infringement judgment entered in *WARF I*. *WARF I*, 905 F.3d at 1347-1350. The Court recognized that WARF did not dispute the district court's decision to instruct the jury to apply the "plain and ordinary meaning" of "particular." *Id.* at 1348. And consistent with the district court's understanding, this Court explained that "the plain meaning of 'particular' … requires the prediction to be associated with a *single* load instruction." *Id.* (emphasis original). The Court then found that Apple's LSD Predictor uses a hashing algorithm to generate load tags, "such that the prediction is associated with a group of

instructions, rather than a *particular* instruction" as the claims require. *Id.* (emphasis original). "Applying the plain and ordinary meaning of the term 'particular,' and drawing all reasonable inferences from the evidence in favor of WARF," the Court thus "h[e]ld that no reasonable juror could have found literal infringement[.]" *Id.*

This Court further acknowledged that "WARF abandoned its theory of infringement under the doctrine of equivalents before trial, and ha[d] proceeded only on a theory of literal infringement." *WARF I*, 905 F.3d at 1347 n.5. Accordingly, the Court reversed the district court's denial of Apple's JMOL motion with respect to non-infringement, without remanding for any further proceedings. *Id.* at 1353.

WARF petitioned for rehearing. Among other things, WARF requested that this Court remand for further proceedings on infringement under the DOE. Appx7283; Appx7288; Appx7300. This Court denied WARF's petition without opinion and issued its mandate. Appx7184-7185; Appx7186.

**E. Post-Appeal District Court Proceedings**

Notwithstanding this Court's decision, WARF went back to the district court and requested a new trial on infringement under the DOE in *WARF I*. WARF also sought to pursue its DOE theory in *WARF II*. As described below, the district court denied WARF's requests—on multiple independent grounds—and directed entry of final judgment against WARF in both cases. Appx1-13.

***<u>WARF I.</u>*** In addressing WARF's request for a new trial, the district court recognized that WARF "largely ignores the procedural history outlined above and instead, principally relies on the Federal Circuit's decision in *Exxon Chemical Patents, Inc. v. Lubrizol Corporation*, 137 F.3d 1475 (Fed. Cir. 1998)." Appx7. The court held that WARF's arguments "fall[] flat" for several reasons. Appx8.

First, the district court found that WARF voluntarily abandoned its DOE theory before trial. The court explained that it "did not preclude [WARF] from pursuing a doctrine of equivalence claim." Appx9. Rather, WARF "abandoned its doctrine of equivalents theory in response to Apple's agreement not to introduce its newly-acquired patent on a[n] LSD Predictor despite the patent-in-suit to demonstrate that the accused technology was separately patentable and, therefore, *not* equivalent." Appx8-9 (emphasis original); *see* Appx2-3 (reciting procedural history). Thus, "unlike the plaintiff in *Exxon*, WARF made the decision to abandon its doctrine of equivalents infringement claim neither because the district court adopted an unfavorable claim[] construction to its doctrine of equivalence contention nor favorable to its claim of literal infringement." Appx9.

Second, the district court recognized that this Court's decision in the prior appeal foreclosed WARF's attempt to reopen infringement. More specifically, the district court rejected WARF's contention that this Court's decision was based on a changed claim construction. On the contrary, the district court noted that both it and

this Court had applied the "plain meaning" of the "particular" claim term and that this Court reversed on infringement because it concluded that "no reasonable jury could find this limitation met in light of undisputed evidence[.]" Appx5; Appx9. "Regardless," the district court added, this Court "concluded [on appeal] that WARF abandoned its theory of infringement under the doctrine of equivalents infringement before trial, and … proceeded only on a theory of literal infringement, which is now the law of the case." Appx9.

Third, the district court concluded that this Court's decision in the first appeal also meant there could be no DOE infringement as a matter of law. As the district court explained, "the Federal Circuit's own conclusion -- that the 'plain meaning of "*particular*" … requires'" the claimed prediction "'to be associated with a *single* load instruction' -- precludes as a matter of law of the case WARF's argument now that this limitation allows for an equivalence infringement based on the prediction being associated with a *group* of load instructions, something it is undisputed each load tag in the accused LSD Predictor depends upon." Appx10. In other words, any equivalence finding would improperly eliminate the "particular" claim requirement altogether. Appx10-11 (citing cases).

***<u>WARF II.</u>*** The district court similarly rejected WARF's attempt to pursue DOE in *WARF II* for multiple reasons. It explained:

> Here, too, the Federal Circuit's holding in *WARF I* applies with equal force to the accused products (namely iPhones and iPads with

> chips still using the same LSD Predictor found not to have infringed the '752 patent in *WARF I*). Similarly, plaintiff WARF not only waived any doctrine of equivalents claim in *WARF I*, but the Federal Circuit's opinion precludes any arguable claim to equivalence, both as explained already. Therefore, WARF is barred from pursuing such a claim not only in *WARF I* but in this new case, procedurally and on the merits. Finally, as detailed above, WARF concedes -- or, at minimum, it is now estopped from disputing -- the LSD Predictor in the A9, A9X and A10 chips that are the subject of *WARF II* are the same as the chips at issue in *WARF I*, at least for purposes of plaintiff's infringement claims under the '752 patent.

Appx12.

The district court further rejected WARF's "scattershot" response to "this seemingly obvious conclusion." Appx12. The court explained that, "whether viewed as claim or issue preclusion, the procedural posture of this case is the same as that presented" in *Nystrom v. Trex Co.*, 580 F.3d 1281 (Fed. Cir. 2009) ("*Nystrom II*"), where "the Federal Circuit had *no* trouble concluding, as the court does here, that the plaintiff in that case was barred from revisiting a doctrine of equivalents theory of infringement based on waiver of that doctrine in past litigation over materially similar, earlier generation of the same products despite later generations being produced during and after the course of the first litigation." Appx12-13 (emphasis original). Finally, as it had already explained with respect to *WARF I*, the district court concluded that "WARF no longer has any viable doctrine of equivalence infringement claim on the merits in light of the Federal Circuit's

limitation resulting from the '752 patent's use of 'particular' within the plain meaning to one of ordinary skill in the art as explained in *WARF I*." Appx13.

## SUMMARY OF ARGUMENT

1. Both this Court and the district court correctly found that WARF waived its DOE theory against Apple's A7/A8 products in *WARF I*. The district court's waiver finding was not an abuse of discretion, as WARF voluntarily abandoned DOE in order to keep Apple's own patent out of evidence during the trial's liability phase. And on appeal, this Court expressly recognized that WARF had abandoned DOE before trial and reversed on infringement without remanding for a new trial on DOE—which, as the district court correctly pointed out, is the law of this case. WARF's arguments challenging the waiver findings are all premised on the false narrative that this Court supposedly adopted a new claim construction in the prior appeal. But there was no change in claim construction: this Court gave the "particular" claim term its plain meaning, just as the district court had instructed the jury to do.

2. The district court correctly concluded that WARF was precluded from pursing DOE against Apple's A9/A10 products in *WARF II*. That conclusion is supported on multiple, independent grounds.

a. As the district court correctly recognized, *Nystrom II* controls the outcome here. In that case, this Court held that the patentee was precluded from

bringing an action alleging infringement under the DOE against second-generation products where: (1) it had already been determined in a prior lawsuit that the first-generation products did not literally infringe; (2) the patentee had waived DOE in the first suit; and (3) the next-generation products were "essentially the same" as the original products with respect to the relevant claim limitations. *Nystrom II*, 580 F.3d at 1285-1286. WARF cannot distinguish *Nystrom II* in any meaningful way. It instead seeks to criticize the decision's doctrinal underpinnings. But as the district court correctly observed, "whether viewed as claim or issue preclusion, the procedural posture of this case is the same as that presented in the *Nystrom* case" and compels the conclusion that WARF's infringement claims in *WARF II* are barred by the *WARF I* judgment. Appx12.

b. Claim preclusion bars WARF's infringement claims against Apple's A9/A10 products. As the district court found, those products are "essentially the same" as the products accused in *WARF I* because they continue to use an LSD Predictor with hashed load tags, and WARF is estopped from arguing otherwise. Although Apple did not release the A9/A10 products until after the *WARF I* complaint, WARF's infringement claims against those products "could have been brought" in *WARF I* because Apple sold those products before the district court entered final judgment and WARF previously agreed that the outcome of the *WARF I* case would control the question of infringement for Apple's A9/A10

products. WARF is therefore barred from pursuing those same infringement claims in *WARF II*.

c. Issue preclusion also bars WARF's efforts to relitigate infringement in *WARF II*. This Court has already ruled that Apple's LSD Predictor does not infringe the '752 patent because it does not associate predictions with a "particular" load instruction as the asserted claims require. If *WARF II* were permitted to go forward, the same parties would have to relitigate the same issue—namely, "infringement of the same claim limitations as to the same features of the accused devices," *Nystrom II*, 580 F.3d at 1285-1286. WARF's arguments against applying issue preclusion all depend on its attempt to redefine the single infringement "issue" as "literal infringement" in *WARF I* and "infringement under the DOE" in *WARF II*. But literal infringement and DOE infringement are not distinct "issues" for preclusion purposes; they are merely alternative "theor[ies]" of infringement. "Having decided to pursue only one theory of infringement" in the first case, WARF "is bound by the consequences of that choice—namely, that [issue preclusion] bars litigants from raising separate arguments in support of the same issue in a later case[.]" *Galderma Labs., L.P. v. Amneal Pharms., LLC*, 337 F. Supp. 3d 371, 410 (D. Del. 2018) (Stark, J.).

d. The *Kessler* doctrine provides an alternative ground for affirmance. *Kessler v. Eldred*, 206 U.S. 285 (1907), bars serial lawsuits for patent

infringement after an accused infringer prevails against the patentee's infringement allegations in a prior suit. Under *Kessler*, all Apple products containing an LSD Predictor with hashed load tags—including the A9/A10 products accused in *WARF II*—have acquired "non-infringing status" by virtue of this Court's decision in *WARF I*. WARF's infringement claims against those products must therefore be dismissed.

3. The district court correctly applied the doctrine of claim vitiation to conclude that there can be no DOE infringement as a matter of law in light of this Court's decision in the first appeal, and that holding provides an independent basis for affirmance in *WARF I* and *WARF II*. More specifically, this Court previously found that Apple's LSD Predictor associates predictions with "groups" of load instructions because it uses hashed load tags. *WARF I*, 905 F.3d at 1348. The Court then concluded that there could be no literal infringement because the plain meaning of the "particular" limitation instead "requires the prediction to be associated with a *single* load instruction." *Id.* (emphasis original). As the district court explained, it necessarily follows that associating a prediction with a *group* of load instructions also cannot be equivalent to associating a prediction with a *single* load instruction because such an equivalence finding would eliminate the "particular" claim requirement altogether. Even though the district court applied claim vitiation *sua sponte*, this Court can and should affirm the judgments on this ground because

WARF has had a full opportunity to brief claim vitiation in this appeal and would not be able to prevail on the merits on remand as a matter of law.

4. Judicial estoppel provides an alternative ground for affirming both judgments. In *WARF I*, WARF previously took the position that it would not litigate DOE infringement if Apple's own patent was excluded from the trial's liability phase. The district court relied upon WARF's representation in ordering that Apple could not introduce its patent at trial, and WARF benefitted from that ruling. WARF therefore may not take the opposite position to resurrect its DOE theory now.

As to *WARF II*, WARF previously took the position that the A9/A10 products are the same as the A7/A8 products that were addressed in *WARF I* for purposes of infringement. WARF also took the position that all that remained to be done for the A9/A10 products, if anything, was an accounting that may be unnecessary "should Apple prevail on appeal." Appx7130. The district court relied upon WARF's representations and deferred any accounting of the A9/A10 products, exactly as WARF desired. Under principles of judicial estoppel, WARF should be held to its prior positions and precluded from litigating infringement anew for the A9/A10 products.

## ARGUMENT

### I. STANDARD OF REVIEW

This Court's law applies to waiver questions that are "unique to patent law," such as whether a patentee waived an infringement theory. *See Harris Corp. v. Ericsson, Inc.*, 417 F.3d 1241, 1250 (Fed. Cir. 2005). This Court reviews a waiver finding for abuse of discretion. *United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 883 (Fed. Cir. 1997).

The interpretation of this Court's mandate is a question of law reviewed *de novo*. *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 950 (Fed. Cir. 1997).

Generally, regional circuit law applies in determining whether preclusion applies. *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1052 (Fed. Cir. 2014). Where aspects of the preclusion analysis involve substantive questions of patent law, however, this Court's law applies. *Id.* Whether preclusion applies is a legal question reviewed *de novo*. *Bernstein v. Bankert*, 733 F.3d 190, 225 (7th Cir. 2013); *see Brain Life*, 746 F.3d at 1052. Underlying factual findings are reviewed for clear error. *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1070 (7th Cir. 2013).

Regional circuit law applies generally to questions of judicial estoppel. *Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1302-1303 (Fed. Cir. 2002). In the Seventh Circuit, a district court's application of judicial estoppel is reviewed for abuse of discretion. *Grochocinski v. Mayer Brown Roe & Maw,*

*LLP*, 719 F.3d 785, 795 (7th Cir. 2013); *see New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) ("[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion." (internal quotation marks omitted)).

## II. THE *WARF I* JUDGMENT SHOULD BE AFFIRMED BECAUSE WARF WAIVED ITS DOE THEORY.

Both this Court and the district court have expressly found that WARF abandoned its DOE theory before trial in *WARF I*. *WARF I*, 905 F.3d at 1347 n.5; Appx8-9; Appx12. The district court's waiver finding was legally correct and not an abuse of discretion, as it is readily supported by the procedural history of this case. The district court was also correct that this Court's opinion and mandate from the first appeal foreclose any further proceedings on infringement in *WARF I.*

### A. WARF Waived Any Theory Of Infringement Under The DOE.

"[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993); *see Laguna Constr. Co. v. Carter*, 828 F.3d 1364, 1372 (Fed. Cir. 2016). Under this Court's law, a party waives an infringement theory when it fails to pursue that theory in the district court. *See Boss Control, Inc. v. Bombardier Inc.*, 410 F.3d 1372, 1380 (Fed. Cir. 2005). Similarly, the Seventh Circuit "find[s] waiver when a [party] [f]or strategic reasons … elect[s] to pursue one argument while foregoing another." *United States v. Hible*, 700 F.3d 958, 961 (7th Cir. 2012) (internal quotation marks omitted).

As the district court found, that is exactly what happened here. WARF made the strategic choice to abandon its DOE theory in order to prevent Apple from introducing evidence of Apple's own patent during the trial's liability phase. Appx8-9 (district court finding "[WARF] abandoned its doctrine of equivalents theory in response to Apple's agreement not to introduce its newly-acquired patent on a[n] LSD Predictor"); Appx12 (district court reiterating that WARF "waived any doctrine of equivalents claim in *WARF I*"); *see supra* pp. 4-5, 12. WARF can no longer litigate the DOE theory that it voluntarily relinquished. *See, e.g.*, *Boss Control*, 410 F.3d at 1380 (finding patentee waived DOE theory by "fail[ing] to present substantive arguments to the district court concerning infringement under the doctrine of equivalents"); *ViaTech Techs. Inc. v. Microsoft Corp.*, 733 F. App'x 542, 554 (Fed. Cir. 2018) (affirming district court's waiver finding where patentee "failed to articulate a theory of infringement under the doctrine of equivalents to the district court"); *see also Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 424 F.3d 1161, 1167 (Fed. Cir. 2005) (affirming district court's finding that party waived obviousness theory).

### B. This Court's Prior Opinion And Mandate Foreclose WARF's Request For A New Trial On DOE.

A trial on WARF's DOE theory is also foreclosed by this Court's decision in the first appeal. Although WARF's appeal brief does not mention it, this Court expressly recognized that "WARF abandoned its theory of infringement under the

doctrine of equivalents before trial, and has proceeded only on a theory of literal infringement." *WARF I*, 905 F.3d at 1347 n.5. As the district court correctly held (and WARF nowhere disputes), this Court's waiver finding "is now the law of the case." Appx9; *see also Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 665 (Fed. Cir. 2017) (holding district court correctly applied law-of-the-case doctrine to find that plaintiff's "waiver 'continue[d] to govern the same issue[] in subsequent stages' of the litigation" (alterations in original)); *Carmody v. Board of Trustees of Univ. of Ill.*, 893 F.3d 397, 407 (7th Cir. 2018) ("The law of the case doctrine is a corollary to the mandate rule and prohibits a lower court from reconsidering on remand an issue expressly or impliedly decided by a higher court absent certain circumstances.").

Nor was a new trial on DOE within the scope of this Court's mandate from the first appeal. As the district court correctly observed, this Court not only acknowledged that WARF waived its DOE theory but then "*reversed* the infringement judgment *without remand* for further proceedings regarding infringement." Appx9; Appx5 (citing *WARF I*, 905 F.3d at 1343, 1353). In fact, as the district court also pointed out, this Court rejected WARF's "specific[] request[]" to "remand for … further proceedings on WARF's theory of infringement under the doctrine of equivalents" when it denied WARF's petition for rehearing. Appx5; *see* Appx7283; Appx7288; Appx7300 (WARF's rehearing petition criticizing appellate

panel for not remanding on DOE and asking for such a remand); *supra* p. 11. Moreover, this Court did not address other arguments that Apple raised in the first appeal and that the Court would have needed to address if infringement remained open in some respect. *See* Appx7311-7312 (Apple's appeal brief raising other non-infringement, vicarious liability, and damages arguments). The district court thus correctly followed this Court's mandate by not granting further proceedings that this Court declined to allow. *See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1356 (Fed. Cir. 2009) ("The mandate rule requires that the district court follow an appellate decree as the law of the case.").

### C. WARF Cannot Undo Its Waiver Or Avoid This Court's Prior Mandate.

Notwithstanding both this Court's and the district court's waiver findings, WARF asserts that it should still be allowed to resurrect its DOE theory in *WARF I*. Br. 36-44. But as the district court accurately summarized, WARF's arguments "largely ignore[] the procedural history" of this case and its reliance on this Court's *Exxon* decision "falls flat." Appx7-8.

#### 1. This Court did not adopt a new claim construction.

WARF first contends that it could not have relinquished a known right—and thus did not waive its DOE theory—because this Court purportedly issued a new claim construction for the first time on appeal. Br. 37-38. According to WARF, it "did not and could not know that it needed to pursue a DoE claim under the Federal

Circuit's new, narrower construction until after the appeal, when that construction was first adopted." Br. 38.

But this Court did not provide a new claim construction on appeal. As WARF acknowledges (at 11-12, 36), the district court instructed the jury to apply the "plain and ordinary meaning" of "particular." Appx11614; *see* Appx4-5. On appeal, this Court noted that "WARF does not dispute the district court's decision to give the term 'particular' its plain and ordinary meaning." *WARF I*, 905 F.3d at 1348; *see* Appx7255 (WARF asserting in prior appeal that "plain and ordinary meaning was sufficient and correct for this limitation"). This Court then "appl[ied] the plain and ordinary meaning of the term 'particular'" in its own analysis and concluded "that no reasonable juror could have found literal infringement[.]" *WARF I*, 905 F.3d at 1348. In other words, this Court found that substantial evidence did not support the jury's infringement verdict under the *same* construction that the district court provided to the jury.

WARF nonetheless suggests that this Court somehow narrowed the construction of the "particular" limitation to refer to "one and only one" load instruction. Br. 36-37. But that was the plain meaning of the claim language all along, as even WARF acknowledged in the first appeal. Appx7270 (WARF stating in prior appeal that interpreting "particular" as requiring "'a prediction associated with a *single* load instruction' … in effect restate[s] the words of the claim" (citation

omitted, emphasis original)). Indeed, the district court concluded during trial that, "consistent with the plain meaning of the claim terms 'the' and 'the particular,'" "claim 1 discloses a prediction associated with a *single* load instruction." Appx15298. This Court then agreed that "the plain meaning of 'particular' … requires the prediction to be associated with a *single* load instruction." *WARF I*, 905 F.3d at 1348 (emphasis original). The purportedly "new" construction this Court adopted on appeal was thus the same construction applied in the district court.[3]

WARF also alleges that it relied upon "Apple's waiver" concerning a jury instruction on claim construction when it chose to drop its DOE theory. Br. 36-37. But as the district court found, WARF abandoned its DOE theory "for reasons wholly apart from" claim construction. Appx9. As the district court explained, WARF expressly tied its abandonment of that theory to the admissibility of Apple's own patent during the trial's liability phase, not anything to do with claim construction. Appx2-3; Appx8-9 ("[WARF] abandoned its doctrine of equivalents theory in response to Apple's agreement not to introduce its newly-acquired patent on a LSD Predictor[.]"). The district court's findings are fully supported by the case

---

[3] WARF does not actually attribute a different meaning to the "particular" limitation; it instead equates plain meaning with "no construction." Br. 36. This Court rejected that position in the first appeal. *WARF I*, 905 F.3d at 1348 ("Giving a term its plain and ordinary meaning does not leave the term devoid of any meaning whatsoever.").

history and are not clearly erroneous. *See supra* pp. 4-7, 10-13, 21-22. Indeed, WARF's pre-trial decision to drop DOE came before the district court found during trial that Apple had waived its request for a curative jury instruction concerning the "particular" limitation, which further demonstrates that WARF's decision could not have been based on Apple's waiver. *See supra* pp. 4-7.

In any event, even if WARF's decision to abandon DOE had been based on the meaning of "particular" (though it clearly was not), WARF concedes that "the governing claim construction" at the time it dropped DOE was "plain and ordinary meaning"—exactly what the district court instructed the jury to apply and what this Court applied on appeal. Br. 36; *see also* Br. 41 (WARF stating that, when it decided to abandon its DOE theory, "it was relying on 'particular' being given its plain and ordinary meaning"). And WARF was well aware of Apple's non-infringement position based on the plain meaning of the "particular" limitation throughout *WARF I*, including when it chose to abandon its DOE theory. Appx4; *see supra* pp. 4-7.

Finally, WARF contends that it could not have waived DOE because it "successfully opposed Apple's motion for JMOL on DoE infringement on the basis that it had never actually been litigated." Br. 38-40. But the district court's JMOL ruling addressed the merits of only what was tried to the jury, not theories that were abandoned before trial. Appx15320-15327; *see* Fed. R. Civ. P. 50 (addressing only what is tried to a jury). Moreover, WARF ignores the district court's explanation

concerning WARF's DOE theory in that same JMOL opinion, where the court made clear that "any attempt by WARF to resurrect abandoned claims would be futile in light of preclusion rules." Appx15322.

**2. *Exxon* does not provide any basis for a new trial on infringement.**

WARF next contends that *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475 (Fed. Cir. 1998), demonstrates that WARF did not abandon DOE. Br. 38-44. It does not. WARF's entire argument for applying *Exxon* rests on the premise that this Court supposedly adopted "a new claim construction" for the "particular" limitation on appeal. Br. 38. As explained above, that is not what happened. *See supra* pp. 24-28. The district court therefore correctly found that *Exxon* does not control here because, "unlike the plaintiff in *Exxon*," WARF made the decision to abandon its DOE theory "in response to Apple's agreement not to introduce its newly-acquired patent on a LSD Predictor," and not "because the district court adopted an unfavorable claim[] construction to its doctrine of equivalence contention[.]" Appx8-9.[4]

WARF further suggests that "this Court in *Exxon* found that because the Court's prior mandate expressly touched only on literal infringement, it did not

---

[4] That this Court did not provide a new claim construction on appeal also distinguishes this case from *ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314, 1326 (Fed. Cir. 2012). *See* Br. 40 n.7.

preclude a new trial on DoE infringement." Br. 39 (citing *Exxon*, 137 F.3d at 1477). WARF ignores that here, by contrast, this Court expressly recognized in the prior appeal that "WARF abandoned its theory of infringement under the doctrine of equivalents before trial[.]" *WARF I*, 905 F.3d at 1347 n.5. WARF also ignores that this Court specifically rejected WARF's request to remand for a new trial on DOE when it rejected WARF's petition for rehearing. Appx5. As the district court correctly recognized when distinguishing *Exxon*, WARF's abandonment of its DOE theory is therefore "the law of th[is] case." Appx9.

## III. THE *WARF II* JUDGMENT SHOULD BE AFFIRMED BASED ON PRECLUSION PRINCIPLES.

The district court correctly concluded that the *WARF I* judgment precludes WARF's infringement claims in *WARF II*. Appx11-13. As the district court found, the accused LSD Predictor in Apple's A9/A10 products is essentially the same as in the *WARF I* products with respect to WARF's infringement contentions. Appx6; Appx12. WARF's infringement claims against the A9/A10 products are therefore barred, whether viewed through the lens of claim preclusion, issue preclusion, or the *Kessler* doctrine.

### A. *Nystrom* Precludes Asserting DOE Against Next-Generation Products In A Second Suit After Waiving DOE In A First Suit.

This Court has squarely held that preclusion principles foreclose raising infringement under exactly the circumstances present here. In *Nystrom v. Trex Co.*,

580 F.3d 1281 (Fed. Cir. 2009) ("*Nystrom II*"), Nystrom filed a first lawsuit alleging that Trex's first-generation wood-composite boards ("Trex I boards") infringed Nystrom's patent. *Id.* at 1283. Following claim construction rulings, the district court entered a judgment of non-infringement. *Id.* at 1284. This Court affirmed that judgment, but remanded for further proceedings on invalidity. *Id.*; *see Nystrom v. Trex Co.*, 424 F.3d 1136, 1151 (Fed. Cir. 2005) ("*Nystrom I*"). "On remand, Nystrom attempted to pursue his infringement claim under the doctrine of equivalents." *Nystrom II*, 580 F.3d at 1284. The district court held that Nystrom had waived that argument, and this Court affirmed "that Nystrom had waived his infringement claim based on the doctrine of equivalents." *Id.*

Nystrom then filed a second lawsuit, alleging that Trex's second-generation products ("Trex II boards") that were released during the pendency of the first suit infringed the same patent. *Nystrom II*, 580 F.3d at 1284. This Court held that the second suit against later-generation products was barred by preclusion principles, explaining that it "ha[d] already determined in the earlier case that Trex I boards do not infringe" the patent and that "judgment applies to both literal infringement and, as a result of Nystrom's waiver, infringement by equivalents." *Id.* at 1285-1286. Because the products accused in the second case "remain[ed] unchanged with respect to the corresponding claim limitations at issue in the first suit," Nystrom had

"no remaining avenue to pursue his claims now," even under a theory of infringement applying the DOE. *Id.* This Court summarized its holding as follows:

> Nystrom made a tactical decision in his initial suit to forego any infringement theory based on the doctrine of equivalents. That choice did not pay off. Given that the Trex II boards remain materially identical to the Trex I boards with respect to the pertinent claim limitations at issue, this court cannot under res judicata permit Nystrom to have a second bite at the apple.

*Id.* at 1286; *see id.* at 1285-1286 ("Res judicata … bars this second attempt to adjudicate the same issues[.]").

That is also what happened here. As in *Nystrom*, WARF waived its DOE theory in *WARF I* for strategic reasons. In *WARF I*, this Court acknowledged that waiver and resolved the sole remaining infringement theory against WARF, definitively establishing non-infringement. *WARF I*, 905 F.3d at 1347 n.5, 1350. That ruling "applies to both literal infringement and, as a result of [WARF's] waiver, infringement by equivalents." *See Nystrom II*, 580 F.3d at 1285. Moreover, like the Trex I and Trex II products in *Nystrom*, the A7/A8 products addressed at trial in *WARF I* and the A9/A10 products accused in *WARF II* are "materially identical … with respect to the pertinent claim limitations at issue" because they all include an LSD Predictor that uses hashed load tags. *See id.* at 1286; *infra* pp. 34-37.

The district court correctly concluded that WARF is precluded under *Nystrom II* from pursuing its infringement claims in *WARF II*. The court explained that, "whether viewed as claim or issue preclusion, the procedural posture of this case is

the same as that presented" in *Nystrom II*, where "the Federal Circuit had *no* trouble concluding, as the court does here, that the plaintiff in that case was barred from revisiting a doctrine of equivalents theory of infringement based on waiver of that doctrine in past litigation over materially similar, earlier generation of the same products despite later generations being produced during and after the course of the first litigation." Appx12-13 (emphasis original).

WARF cannot deny the overwhelming similarities between *Nystrom II* and *WARF II*. It instead contends that "*Nystrom* does not dictate the result in this case" because, according to WARF, "*Nystrom* misapplied this Court's claim preclusion precedents." Br. 25; *see id.* at 25-27. Although *Nystrom II* "characterized its analysis as falling under the general rubric of res judicata or claim preclusion," this Court later described *Nystrom II* as "appl[ying] the doctrine generally referred to as collateral estoppel or issue preclusion." *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1343-1344 (Fed. Cir. 2012); *see Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 478 (Fed. Cir. 1991) ("[R]es judicata can also be used in the sense of any preclusion of litigation arising from a judgment, including collateral estoppel[.]"). But the doctrinal label for the preclusion principle underlying *Nystrom II* is immaterial to the outcome here. *Nystrom II* is binding law that is on all fours with this case and therefore precludes WARF's infringement claims in *WARF II*. And,

in any event, both claim preclusion and issue preclusion apply here for the reasons discussed in the following sections.

**B. Claim Preclusion Bars WARF's Infringement Claims In *WARF II*.**

Claim preclusion provides that "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979). Under Seventh Circuit law, claim preclusion generally requires: "(1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suit; and (3) an identity of parties or privies in the two suits." *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1364 (7th Cir. 1988). WARF does not dispute that the first and third elements are satisfied here (*see* Br. 20-27), as this Court and the district court entered final judgments on the merits of WARF's infringement claim in *WARF I* and the parties are identical in both cases. Appx7181; Appx14-15.

The second element—identity of the causes of action—"is a claim preclusion issue that is 'particular to patent law'" and governed by this Court's precedent. *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008). If the patent asserted in each lawsuit is the same, as here, then "[f]or claim preclusion to apply … the alleged infringer must demonstrate that the accused product … is 'essentially the same' as the accused product … in the first litigation." *Brain Life*, 746 F.3d at 1053

(citation omitted). "[C]laim preclusion bars both claims that were brought as well as those that could have been brought" in the first suit. *Id.* (emphasis omitted).

### 1. Apple's A9/A10 products are "essentially the same" as the A7/A8 products accused in *WARF I*.

Products need not be identical in all respects to be "essentially the same." Subsequent versions of previously accused products are "essentially the same" so long as any changes made to the new products are immaterial to the claim limitations at issue, even if the changes may be material in other respects. *See Acumed*, 525 F.3d at 1324 ("Accused devices are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'" (quoting *Foster*, 947 F.2d at 480)).

Here, the district court found "[t]here [wa]s no dispute that the LSD Predictor technology at issue in … *WARF II* … is the same as that at issue in *WARF I*, at least as material to [WARF's] renewed infringement claims under the '752 patent." Appx6; *see* Appx12. That factual finding was not clearly erroneous, and was supported by unrebutted evidence including a declaration from an Apple engineer describing Apple's A7, A8, A9, and A10 source code. Appx6 (citing Appx7320-7324(¶¶4-12)); *see* Appx7325-7339 (Apple's source code for the LSD Predictor using hashed load tags). As the district court accurately summarized, "all of the chips at issue in these two cases contain the same accused feature—the LSD Predictor using hashed load tags." Appx6. The A9/A10 products are therefore

"essentially the same" as the previously accused products with respect to infringement. *See WARF I*, 905 F.3d at 1348 (finding that, because it uses hashed load tags, Apple's LSD Predictor associates a prediction with a "group" of load instructions rather than with a "particular" load instruction as the asserted claims require).

WARF does not dispute that Apple's A9/A10 products continue to include an LSD Predictor that uses hashed load tags or that that fact means the products in both cases are "essentially the same" with respect to infringement. *See* Br. 27. Instead, WARF claims "there was an insufficient basis in the record" to support the district court's finding because, according to WARF, "Apple provided no discovery on the A9 and A10 processors." *Id.* That is simply untrue. WARF cites a 2014 docket entry where the district court denied WARF's motions to compel certain discovery. Br. 27 (citing Appx15106). But Apple produced source code for the A9 and A9X chips, and WARF and its expert inspected that code on several occasions in 2016—*three years before* the parties briefed the "essentially the same" question. Appx7303-7308 (emails reflecting WARF's review of this code). And contrary to WARF's complaint, WARF was not deprived of an opportunity to "test the assertions" in the declaration from Apple's engineer. *See* Br. 27. WARF had access to the A9, A9X, and A10 source code discussed in the declaration and could have sought to depose Apple's engineer or to submit a declaration from its own expert.

That WARF chose not to do so reflects only that there was nothing to dispute—because the source code definitively shows that Apple's A9/A10 products continue to include an LSD Predictor that uses hashed load tags.[5]

In any event, the district court also found that "WARF concedes—or, at minimum, it is now estopped from disputing—the LSD Predictor in the A9, A9X and A10 chips … [is] the same as the chips at issue in *WARF I*, at least for purposes of [WARF's] infringement claims." Appx12. WARF does not challenge or even acknowledge this estoppel ruling on appeal (*see* Br. 27), nor could it show that the ruling was an abuse of discretion or otherwise erroneous. As the district court pointed out, WARF previously "assert[ed] that the A9, A9X and A10 chips … infringed the '752 patent because they 'operate in a manner reasonably similar' to the A7 chip at issue in *WARF I*." Appx6 (quoting Appx15062); *see* Appx6010 (WARF stating that its infringement contentions for the A7 chip were "representative" for Apple's other chips, including the A9, A9X, and A10). WARF also repeatedly made statements "in post-trial briefing seeking equitable relief against the A9 chips, because it has the 'same infringing design' as the A7 and A8 chips." Appx6; *see* Appx7005-7006; Appx7008; Appx7013-7014. Even after

---

9 As WARF's expert agreed, the source code is what defines how Apple's products actually work. Appx10553 ("Q … [T]he code is going to trump; correct? A That's correct.").

WARF reviewed the A9 and A9X source code, WARF maintained that there was "broad agreement" between the parties that "the A9, A9X, and A10 chips are not more than colorably different from the A7, A8, and A8X chips with respect to the accused feature." Appx7129-7130. As the district court correctly held, WARF cannot take a different position now. Appx12; *see New Hampshire*, 532 U.S. at 749.[6]

#### 2. WARF's infringement claims against Apple's A9/A10 products "could have been brought" in *WARF I*.

WARF contends that it could not have brought its infringement claims against the A9/A10 products in *WARF I* because those products did not exist at the time of the complaint in that case. Br. 22-23. But WARF does not—and cannot—dispute that Apple sold all of the accused A9/A10 products before the district court entered final judgment in *WARF I*. Appx7046; Appx7149-7150 & n.1. This Court has expressly applied claim preclusion to products that—like here—were sold after the filing of the complaint but before the entry of final judgment in the first suit. *See Brain Life*, 746 F.3d at 1053, 1058 (holding that claim preclusion barred "all allegations of infringement relating to activity that *predated the final [] judgment*" in the prior litigation, where the second suit involved allegations of infringement against "new iterations" of the defendant's products that were "essentially the same

---

[6] Once the A9/A10 products were finalized and released, Apple consistently agreed with WARF that the LSD Predictor in those products was essentially the same as the LSD Predictor in the A7/A8 products. *E.g.*, Appx7045-7046; Appx7127; Appx7149.

as the previously litigated versions"); *Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*, 2010 WL 4448824, at *2, *5 (D. Haw. Oct. 29, 2010) (applying claim preclusion to bar infringement claim under DOE theory against products released *during pendency of prior action*), *aff'd*, 424 F. App'x 961 (Fed. Cir. 2011). That is also why *Nystrom II*, which involved products that "reached the market after the filing date of the original … complaint," could characterize its holding as falling under the rubric of claim preclusion. *See Nystrom II*, 580 F.3d at 1284.

WARF ignores this precedent and instead relies on *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335 (Fed. Cir. 2012), and *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017), to suggest that claim preclusion can never cover conduct that occurs after the complaint in the first action. Br. 20. But in both cases, this Court held that claim preclusion did not bar the patentee's infringement claims only for products that—unlike here—were sold after the judgment in the first action. *See Aspex Eyewear*, 672 F.3d at 1343-1344 (addressing "products created after" the first action); *Mentor Graphics*, 851 F.3d at 1299-1300 (addressing "conduct occurring after the previous litigation ended"); *see also In re PersonalWeb Techs. LLC*, 961 F.3d 1365, 1376 (Fed. Cir. 2020) ("We have generally held that claim preclusion cannot apply to acts of alleged infringement that occur after the *final judgment* in the earlier suit."). As to products "made or sold during the pendency" of the first action, the Court stated that claim preclusion

applies where "the parties consented to have the court adjudicate their rights" as to those post-complaint products. *Aspex Eyewear*, 672 F.3d at 1345. That is what happened here during post-trial proceedings in *WARF I*.

More specifically, in *WARF I*, the district court ordered that WARF was entitled to ongoing royalties covering the A9/A10 products. Appx15360. Apple and the district court then invited WARF to include those products in the *WARF I* judgment because doing so would "eliminate[] the need to pursue [*WARF II*] further." Appx7127 & n.25; *see* Appx6. WARF told the district court that it agreed "in substance" with that proposal. Appx7129-7130. Although WARF ultimately avoided including the A9/A10 products in the *WARF I* judgment, the reason it did so had nothing to do with any alleged need to retry infringement (under a DOE theory or otherwise). The only question that WARF left open at the time was an accounting for the A9/A10 products, and WARF represented that deferring that accounting would "greatly conserve the resources of the parties and the [c]ourt" because such an accounting would be unnecessary if Apple prevailed on appeal in *WARF I*. Appx7130-7131; Appx7138-7139; *see* Appx7. Stated differently, WARF agreed that the outcome of the *WARF I* case would determine infringement not only for the A7/A8 products, but for the A9/A10 products as well. *See supra* pp. 8-10. It

therefore "consented to" have the *WARF I* court adjudicate its rights with respect to the A9/A10 products. *See Aspex Eyewear*, 672 F.3d at 1345.[7]

Furthermore, the district court did not "preclude[]" WARF from litigating its infringement claims against the A9/A10 products in *WARF I*. *See* Br. 20-22. WARF focuses solely on events that occurred early in the litigation, when the district court initially excluded the unreleased A9/A10 products from discovery. *Id.* But WARF ignores that after Apple began selling the A9/A10 products, Apple provided discovery (including source code and sales data) concerning those products and the parties agreed that the A9/A10 products were not more than colorably different from the products addressed at trial in *WARF I* with respect to the accused feature. Appx7149-7150; Appx7129-7130. Indeed, the district court ordered Apple to produce sales data for the A9 and A9X products in *WARF I*. Appx15360-15361. Because this all occurred before the district court entered final judgment, WARF's infringement claims against the A9/A10 products "could have been brought" in *WARF I*. *See Brain Life*, 746 F.3d at 1053; *Xiaohua Huang v. Huawei Techs. Co.*,

---

[7] The other cases cited by WARF (at 27 n.4) are inapplicable in view of WARF's agreement that the outcome of *WARF I* would determine the question of infringement in *WARF II*. Moreover, WARF's suggestion (at 22) that Apple "acquiesced" in WARF's claim splitting is incorrect. The district court (and WARF) consistently recognized that *WARF I* would have a preclusive effect on *WARF II*. *See, e.g.*, Appx8003 (district court stating that "a final judgment in *WARF I* will likely have preclusive effect" in *WARF II*).

787 F. App'x 723 (Fed. Cir. 2019) (applying claim preclusion to bar infringement claims against new products in a second case, where the district court had initially denied the patentee's motion to add those products to the first action).

Given this history, WARF's infringement claims against the A9/A10 products plainly "could have been brought" in *WARF I*. Claim preclusion therefore bars WARF from litigating those claims in *WARF II*.

### C. Issue Preclusion Bars WARF's Infringement Claims In *WARF II*.

Under the doctrine of issue preclusion, an issue may not be litigated if: "(1) the issue sought to be precluded is the same as that involved in a prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was represented in the prior action." *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000). Where the patentee asserts the same patent in the second suit, as here, the relevant question in determining whether the infringement issue is the same in the second case turns on whether "'a close identity exists between the relevant features of the accused device and the device previously determined to be [non-]infringing' such that they are 'essentially the same.'" *ArcelorMittal Atlantique et Lorraine v. AK Steel Corp.*, 908 F.3d 1267, 1274 (Fed. Cir. 2018) (citation omitted).

The application of issue preclusion here is straightforward: the issue—whether Apple's accused products infringe the '752 patent—is the same in both

cases, was actually litigated at trial in *WARF I*, and was essential to the final judgment. As discussed above, the products accused in *WARF I* and *WARF II* are "essentially the same" with respect to infringement because they all contain an LSD Predictor that uses hashed load tags. *See supra* pp. 34-37. Thus, if *WARF II* were permitted to go forward, WARF "would be attempting to prove infringement of the same claim limitations as to the same features of the accused devices." *Nystrom II*, 580 F.3d at 1286. Preclusion principles "bar[] this second attempt to adjudicate the same issues." *Id.*; *see Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380-1382 (Fed. Cir. 2013) (applying issue preclusion to bar infringement claims against rimless magnetic clip-on sunglasses that were "materially identical" to sunglasses previously found to be non-infringing).

WARF's arguments against issue preclusion all hinge on its attempt to redefine the single infringement "issue" as "literal infringement" in *WARF I* and "infringement under the DOE" in *WARF II*. *See* Br. 28-36. But literal infringement and DOE infringement are not separate "issues" for preclusion purposes. They are merely different "theor[ies]" of infringement, as this Court recognized in the prior appeal. *WARF I*, 905 F.3d at 1347 n.5; *see also Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1149 (Fed. Cir. 2004) ("Infringement requires that every limitation of a claim be met, either literally or equivalently, by the accused device."). And that is exactly how WARF treated literal infringement and DOE infringement

in these cases. For example, WARF's original and proposed amended complaints in *WARF II*—like its complaint in *WARF I*—asserted a single count for "infringement" without distinguishing between literal and DOE theories. Appx1004-1006(¶¶18-27); Appx1012-1014(¶¶18-27); Appx8012-8014(¶¶26-35). WARF identifies no case holding that literal infringement and DOE infringement are separate "issues" for preclusion purposes, and in fact the case law supports the opposite conclusion.

This Court held in *Nystrom II*—which WARF characterizes as "an issue preclusion case" (Br. 16, 26)—that a patentee who failed to prove literal infringement in a first suit was barred from asserting infringement under the DOE in a second suit where, as WARF did here, it had abandoned DOE in the first suit. *Nystrom II*, 580 F.3d at 1283-1286. The Court's analysis treated "infringement" as the precluded issue, explaining that the patentee was barred from again "attempting to prove *infringement* of the same claim limitations as to the same features of the accused devices." *Id.* at 1285-1286. And that makes good sense, for the "issue" must be understood broadly enough "to prevent repetitious litigation of what is essentially the same dispute." Restatement (Second) of Judgments § 27, Comment c, at 252-253.

WARF's attempts to distinguish *Nystrom II* are beside the point when considering the single "issue" of infringement for preclusion purposes. *See* Br. 34-

36. They are also inaccurate. For example, WARF asserts that the *Nystrom* patentee "actually litigated" infringement under the DOE in the first case because he stipulated to "non-infringement generally." Br. 34-35. But the district court found that the patentee there, like WARF, *waived* his DOE theory by failing to pursue it in the first case. *Nystrom v. Trex Co.*, 2006 WL 208591, at *3-4 (E.D. Va. Jan. 25, 2006) (finding waiver of DOE because Nystrom "failed to present such arguments," "raise such claim," or "argue during the Markman hearing or at any other time in opposition of summary judgment that [he] could establish infringement 'equivalently'"); *see Nystrom II*, 580 F.3d at 1284 (affirming "that Nystrom had waived his infringement claim based on the doctrine of equivalents"). WARF also states that "unlike *Nystrom*, this Court's opinion in *WARF I* was limited to literal infringement." Br. 35. But that is simply wrong: this Court expressly recognized that WARF "abandoned its theory of infringement under the doctrine of equivalents before trial[.]" *WARF I*, 905 F.3d at 1347 n.5.

Contrary to WARF's suggestion (at 34-35), nothing in *Aspex Eyewear* distinguishes *Nystrom II* from this case. *Aspex Eyewear*'s explanation that *Nystrom I* "resolved certain issues against the appellant" refers to the constructions for the two claim limitations at issue in *Nystrom I*. 672 F.3d at 1343; *see Nystrom II*, 580 F.3d at 1285. *Aspex Eyewear* does not discuss the disposition of the patentee's DOE

theory in *Nystrom I*, let alone suggest that it was any different from WARF's abandonment of DOE here.

Similar to this Court's *Nystrom II* decision, in *Galderma Laboratories, L.P. v. Amneal Pharmaceuticals, LLC*, 337 F. Supp. 3d 371 (D. Del. 2018) (Stark, J.), the district court expressly ruled that issue preclusion barred a patentee's attempt to allege DOE infringement in a second suit where the patentee had pursued only literal infringement at trial in the first suit. *Id.* at 410. The court explained that literal infringement and DOE infringement are alternative theories of infringement, not distinct "issue[s]" for purposes of issue preclusion. *Id.* ("Doctrine of equivalents infringement is one theory of infringement, not a distinct issue itself."). Thus, the court held that "[h]aving decided to pursue only one theory of infringement in [the first case, the patentee] is bound by the consequences of that choice—namely, that collateral estoppel bars litigants from raising separate arguments in support of the same issue in a later case, where the other prerequisites for application of collateral estoppel are met." *Id.*[8]

The same result should apply here. Not only is WARF's infringement claim in *WARF II* squarely precluded under *Nystrom II*, but a different outcome would

---

[8] Although this Court reversed part of the district court's decision in *Galderma*, that reversal related to different patents and did not affect the district court's issue-preclusion decision, which was not part of the appeal. *Galderma Labs., L.P. v. Amneal Pharms. LLC*, 806 F. App'x 1007, 1014 n.5 (Fed. Cir. 2020).

"risk[] incentivizing parties to withhold infringement theories in order to ensure a 'second bite at the infringement apple' in the event of a finding of non-infringement." *Galderma*, 337 F. Supp. 3d at 411. It would also "upend[] the finality of judgments that collateral estoppel aims to preserve and would require parties to relitigate infringement of the same products covered by the same patents when the issue of infringement has already been decided—a decidedly wasteful use of judicial resources." *Id.* (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008), and *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)).

### D. The *Kessler* Doctrine Provides An Alternative Ground For Affirmance in *WARF II*.

Even if the Court were to conclude that claim and issue preclusion did not apply here (though it should not), WARF's infringement claim in *WARF II* would still be barred by the *Kessler* doctrine. The parties fully briefed *Kessler* to the district court. Appx8072-8075; Appx8155-8161; Appx8216-8223. Although the district court did not reach Apple's *Kessler* arguments after finding preclusion under *Nystrom II* (Appx12-13), this Court may rely on the doctrine as an alternative ground for affirming the *WARF II* judgment. *See Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1350 (Fed. Cir. 2013) ("An appellate court can affirm a decision of the trial court upon any ground supported by the record."); *Jones v. Cummings*, 998 F.3d 782, 785 (7th Cir. 2021) (similar).

The *Kessler* doctrine bars serial lawsuits for patent infringement after an accused infringer prevails against the patentee's infringement allegations in a prior case. *Kessler* "fills the gap between [claim and issue] preclusion doctrines, … allowing an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result." *Brain Life*, 746 F.3d at 1056 (emphasis original). As a result, *Kessler* "precludes some claims that are not otherwise barred by claim or issue preclusion." *Id.* at 1055-1056; *see PersonalWeb*, 961 F.3d at 1377 (describing *Kessler* as "a close relative to claim preclusion, without its temporal limitation"); *Xiaohua Huang*, 787 F. App'x at 726 n.1 (applying *Kessler* to bar infringement claims against activity that occurred after the judgment in the first case).

Under *Kessler*, following a non-infringement judgment in a first suit, the patentee is estopped from accusing subsequent versions of those products in a later suit if they are "essentially the same" as the products accused in the first suit. *Brain Life*, 746 F.3d at 1057. The guiding principle is that the adjudicated products—as well as any products that are "essentially the same"—"acquire[] the status of a noninfringing device vis-à-vis the same accusing party[.]" *Id.*; *see also SpeedTrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1323 (Fed. Cir. 2015) ("[U]nder *Kessler*, a party who obtains a final adjudication in its favor obtains 'the right to have that which it lawfully produces freely bought and sold without restraint or interference.'"

(quoting *Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co.*, 232 U.S. 413, 418 (1914))); *PersonalWeb*, 961 F.3d at 1379 (applying *Kessler* to bar a second infringement suit where the patentee stipulated to non-infringement in an earlier suit and thus "conferred upon [the accused infringer] a limited trade right to continue producing, using, and selling [the accused products] without further harassment from [the patentee]").

As discussed above, Apple's A9/A10 products accused in *WARF II* are "essentially the same" as the A7/A8 products addressed in *WARF I*. *See supra* pp. 34-37. Thus, the A9/A10 products have "acquire[d] the status of … noninfringing device[s]," and the *Kessler* doctrine bars WARF's infringement claims in this second suit. *See Brain Life*, 746 F.3d at 1057-1058; *id.* at 1058 ("[B]ecause [the products accused in the second suit] are essentially the same accused products, [the patentee's] claims are barred under the *Kessler* Doctrine.").

As with claim preclusion and issue preclusion, the fact that WARF abandoned its DOE theory in *WARF I* does not allow it to avoid the *Kessler* doctrine. *Kessler* bars all infringement claims of the same patent against products that are "essentially the same" as those previously adjudicated to be non-infringing—regardless of which infringement theories were litigated in the prior case. *See Brain Life*, 746 F.3d at 1058-1059 (holding that under *Kessler* a defendant's products "have acquired the status of noninfringing products as to the [patent], i.e., all claims that were brought

or could have been brought in the first suit"). This Court has accordingly applied *Kessler* to bar a patentee—like WARF—that failed to prove literal infringement in a first lawsuit from litigating infringement under the DOE in a subsequent suit against products that are essentially the same. *See SpeedTrack*, 791 F.3d at 1322 (affirming district court's holding that "[a]lthough SpeedTrack argued that it had not yet litigated … whether [the defendants'] use of the IAP software infringes under the doctrine of equivalents, … 'the *Kessler* doctrine bars all subsequent assertions of the same patent'" (citation and emphasis omitted)).

Under the *Kessler* doctrine, the *WARF I* judgment "settled finally and everywhere" that Apple's products containing an LSD Predictor with hashed load tags do not infringe the '752 patent. *SpeedTrack*, 791 F.3d at 1325 (quoting *Kessler*, 206 U.S. at 288). It is now Apple's right to "'be let alone by' [WARF], and it is [WARF's] 'duty to let [Apple] alone.'" *Id.* (quoting *Kessler*, 206 U.S. at 289); *see also Brain Life*, 746 F.3d at 1059 (holding that "[t]he *Kessler* doctrine precludes" the patentee "from asserting any claims of the [asserted] patent against" the accused products "because they are essentially the same as the iterations litigated in the first suit"); *MGA, Inc. v. General Motors Corp.*, 827 F.2d 729, 734-735 (Fed. Cir. 1987) (concluding that where "the accused machines here are admittedly the same in both suits, it is [the defendant's] right that the accused machines be freely traded without interference from" the patentee).

## IV. THE DISTRICT COURT CORRECTLY FOUND THERE CAN BE NO DOE INFRINGEMENT AS A MATTER OF LAW BECAUSE THAT WOULD VITIATE THE "PARTICULAR" LIMITATION.

In addition to its waiver and preclusion determinations discussed above, the district court also held that "WARF no longer has any viable doctrine of equivalence infringement claim on the merits" in light of this Court's decision in the first appeal. Appx13. More specifically, the district court explained that:

> [T]he Federal Circuit's own conclusion -- that the "plain meaning of '*particular*' as understood by a person of ordinary skill in the art after reading the '752 patent requires" an LSD Predictor "to be associated with a *single* load instruction" -- precludes as a matter of law of the case WARF's argument now that this limitation allows for an equivalence infringement based on the prediction being associated with a *group* of load instructions, something it is undisputed each load tag in the accused LSD Predictor depends upon.

Appx10-11; *see* Appx12 ("[T]he Federal Circuit's opinion precludes any arguable claim to equivalence[.]"). That conclusion was both legally correct and based on factual findings that are not clearly erroneous, and it provides an independent basis for affirming the judgments in both *WARF I* and *WARF II*.

This Court found in the prior appeal that Apple's LSD Predictor associates predictions with "groups" of load instructions because it uses hashed load tags. *WARF I*, 905 F.3d at 1348 ("[M]ultiple load instructions may hash to the same load tag. Each load tag can therefore be associated with a *group* of load instructions—namely, all of the load instructions that hash to the same load tag." (emphasis original)). The Court then concluded that there could be no literal infringement

because the plain meaning of the "particular" limitation instead "requires the prediction to be associated with a *single* load instruction." *Id.* (emphasis original). As the district court explained, it necessarily follows that associating a prediction with a *group* of load instructions also cannot be equivalent to associating a prediction with a *single* load instruction because such an equivalence finding would eliminate the "particular" claim requirement altogether. Appx10-11. This is a classic application of the claim vitiation doctrine. *See, e.g.*, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1344-1345 (Fed. Cir. 2016) (reversing jury verdict upon concluding that "a single feedback signal" could not be equivalent to what was claimed because "[a] finding to the contrary would render the requirement that the feedback signals be 'distinct' … meaningless"); *American Calcar, Inc. v. American Honda Motor Co.*, 651 F.3d 1318, 1339 (Fed. Cir. 2011) (rejecting DOE theory because "finding a signal from one source to be equivalent to 'signals from a plurality of sources' would vitiate that claim limitation by rendering it meaningless"); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) (holding that it "would defy logic" to conclude that a "minority"—the very antithesis of a "majority"—could be equivalent to a limitation requiring a "majority," and "no reasonable juror could find otherwise").

WARF nonetheless asserts that the district court "misapprehended the law on claim vitiation." Br. 48. But there was no legal error. This Court has made clear

that claim vitiation applies where, as here, "*the patentee's theory of equivalence [i]s legally insufficient* because, rather than demonstrate an insubstantial difference between a limitation and an element in the accused device, the theory effectively eliminate[s] a limitation in its entirety." *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1017-1018 (Fed. Cir. 2006); *see Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998) ("If a theory of equivalence would vitiate a claim limitation, however, then there can be no infringement under the doctrine of equivalents as a matter of law."); *see also Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) ("[T]he application of the [DOE], even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety."). Stated differently, no matter what evidence WARF claims it could present, its DOE theory cannot establish infringement as a matter of law because an equivalence finding where the accused products associate predictions with "groups" of load instructions—which this Court already found is what Apple's LSD Predictor does—would eliminate the "particular" requirement from the claims.

WARF's arguments concerning how it claims it would prove DOE infringement fare no better. As an initial matter, WARF repeatedly states that it would seek to prove DOE infringement under this Court's "new" claim construction (Br. 45, 46, 48, 49, 54-55), but there was no change in claim construction. *See supra* pp. 24-28. WARF also rehashes evidence and arguments that this Court already

specifically considered and rejected, and that conflict with this Court's opinion in the prior appeal. Br. 49-56; *see WARF I*, 905 F.3d at 1349 ("[I]t is unreasonable to infer that the 0.1% statistic was referring to the *frequency* of aliasing[.]" (emphasis original)); *id.* at 1349-1350 ("[E]ven accepting WARF's unreasonable view of this evidence (that the *frequency* of aliasing is 0.1%), this does not support an inference that load tags sometimes represent a single load instruction." (emphasis original)); *id.* at 1350 ("[I]t is not reasonable to infer that the load tags, in practice, uniquely identify load instructions. And even if this inference were reasonable, it would not be enough to support a finding that Apple's processors actually practice the 'particular' limitation[.]"). In short, none of WARF's evidence can change the established fact—which is now the "law of the case" (Appx10)—that Apple's LSD Predictor uses hashed load tags and therefore associates predictions with "groups" of load instructions. *See WARF I*, 905 F.3d at 1348. That alone suffices to preclude WARF's DOE theory as a matter of law under the vitiation doctrine.

Finally, WARF complains that the district court erred procedurally by *sua sponte* granting judgment on the alternative ground of claim vitiation. Br. 44-46, 48-49. But WARF has had a full opportunity to brief the subject to this Court, and it cannot show any prejudice from the district court's vitiation holding, which reflects the only permissible legal conclusion on the merits of WARF's DOE infringement theory in light of this Court's decision in *WARF I*. *See supra* pp. 50-

53. Accordingly, even though the district court raised claim vitiation *sua sponte*, this Court can—and should—affirm the judgments on this ground because WARF would not be able to prevail on remand. *See Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1035 (7th Cir. 2019) (explaining that where a party "cannot win, [the court] will not go through the pointless exercise of remanding the case"); *Tranzact Techs., Ltd. v. Evergreen Partners, Ltd.*, 366 F.3d 542, 549 (7th Cir. 2004) ("[A] *sua sponte* judgment may be affirmed if the complaining party cannot show on appeal that it was deprived of the opportunity to present a viable claim."); *Southern Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation & Sheet Metal Co.*, 302 F.3d 667, 678 (7th Cir. 2002) ("[W]e see no reason to remand the case because Players was given a full opportunity to make its argument on appeal, and … the argument presented does not allow it to prevail[.]").

## V. JUDICIAL ESTOPPEL PROVIDES AN ALTERNATIVE GROUND FOR AFFIRMANCE IN *WARF I* AND *WARF II*.

WARF is also barred from pursuing its DOE theory as a matter of judicial estoppel. The parties fully briefed judicial estoppel to the district court. Appx8056-8058; Appx8075-8078; Appx8129-8132; Appx8166-8170; Appx8223-8228. Although the district court did not reach the question (except that it found that WARF is estopped from arguing that the accused products in the two cases are not "essentially the same," *see supra* pp. 36-37), judicial estoppel provides an alternative

basis for affirmance in *WARF I* and *WARF II*. *See Orion*, 704 F.3d at 1350; *West Side Salvage, Inc. v. RSUI Indem. Co.*, 878 F.3d 219, 222 (7th Cir. 2017).

Under principles of judicial estoppel, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire*, 532 U.S. at 749. Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* When assessing judicial estoppel, courts generally look to three factors: (1) "a party's later position must be 'clearly inconsistent' with its earlier position"; (2) "the party has succeeded in persuading a court to accept that party's earlier position"; and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750-751; *see In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 661 (7th Cir. 2010).

### A. Judicial Estoppel Bars WARF From Resurrecting Its Abandoned DOE Theory In *WARF I*.

WARF's attempt to revive its abandoned DOE position in *WARF I* is a classic example of what judicial estoppel exists to protect against. WARF took the position that it would abandon DOE to obtain the benefit of excluding Apple's own patent

from evidence during the trial's liability phase. Appx6824. Apple relied upon WARF's position. Appx6837-6838. And WARF succeeded in achieving its objective: the district court accepted WARF's position that it was abandoning its DOE theory and, as a result, ordered that Apple could not introduce evidence of its own patent during the trial's liability phase. Appx15290; Appx15294. After it lost the *WARF I* appeal, WARF took the opposite position when it attempted to revive its DOE theory. Allowing that reversal in position would provide WARF with an unfair advantage to Apple's detriment by providing WARF a "do over" on infringement.[9]

### B. Judicial Estoppel Also Bars WARF From Litigating Infringement In *WARF II*.

WARF is also estopped from pursuing its infringement claims in *WARF II*. Before the *WARF I* appeal, WARF represented that there was "broad agreement on substance" between the parties that "the A9, A9X, and A10 chips are not more than colorably different from the A7, A8, and A8X chips with respect to the accused feature" and that "the same ongoing royalty rate determined by the [c]ourt (as may be modified on appeal and/or remand) will apply to all infringing processors after

---

[9] Judicial estoppel applies even though WARF ultimately lost on infringement on appeal. What matters for estoppel is that WARF prevailed on the subsidiary question—excluding Apple's patent from evidence—by taking the prior inconsistent position. *See In re Cassidy*, 892 F.2d 637, 641-642 (7th Cir. 1990) ("Even though Cassidy did not prevail on the appeal as a whole, he did prevail on the subsidiary question of what issues were to be decided by the court.").

the date of the judgment." Appx7129-7130. WARF therefore took the position that all that remained to be litigated in *WARF II* was an accounting of "the numbers of A9, A9X, A10, A10X and later processors that are royalty-bearing," if any, which WARF argued should be deferred until after the *WARF I* appeal because "should Apple prevail on appeal, there may be no need for such calculations." Appx7130.

Although Apple believed it had provided WARF with sufficient information to perform an accounting for the A9/A10 products (Appx7150-7151), Apple relied on WARF's representations in agreeing not to oppose WARF's proposal to defer that accounting. Appx7155 ("As WARF notes, if Apple prevails on appeal, there would be no need to perform any supplemental damages or royalty calculations for the A9, A9X, and A10 chips, such that deferring such an accounting may ultimately conserve resources for the Court and the parties."). And WARF got exactly what it wanted from taking that position: the district court deferred an accounting for the A9/A10 products as WARF requested. Appx7157-7158.

WARF's position today that it is entitled to litigate infringement in *WARF II* is clearly inconsistent with its prior position. There is no room for WARF to try infringement of the A9/A10 products separately given WARF's prior position that those products "are not more than colorably different from the A7, A8, and A8X chips with respect to the accused feature." Appx7129-7130. WARF's current position that it should be entitled to litigate an entirely new case against the A9/A10

products is also inconsistent with achieving the efficiencies that WARF used to justify deferring an accounting of those products in the first place.

Nor is the outcome of the *WARF I* appeal a changed circumstance that could somehow excuse WARF's reversal in position. The possibility that WARF might lose on appeal was the reason WARF said deferring an accounting was "the most efficient path forward." Appx7130 ("[S]hould Apple prevail on appeal, there may be no need for such calculations."); Appx7138-7139 ("[S]hould Apple prevail on appeal, then this procedure will have conserved significant resources, as the need for such calculations could be eliminated entirely."). Now that Apple has prevailed on appeal, WARF should be held to its word. *See In re Cassidy*, 892 F.2d 637, 641-642 (7th Cir. 1990) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position."); *Trustees in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1353-1357 (Fed. Cir. 2010) (blocking party's change in legal position "simply because his interests have changed").

## CONCLUSION

Apple respectfully requests that this Court affirm the *WARF I* and *WARF II* judgments.

Respectfully submitted,

/s/ William F. Lee

WILLIAM F. LEE
LAUREN B. FLETCHER
ANDREW J. DANFORD
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Attorneys for Defendant-Appellee Apple Inc.*

STEVEN J. HORN
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6432

December 1, 2022

## CERTIFICATE OF SERVICE

I hereby certify that, on this 1st day of December, 2022, I filed the foregoing Brief for Defendant-Appellee Apple Inc. with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

/s/ William F. Lee
WILLIAM F. LEE
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because:

1. The filing has been prepared using a proportionally-spaced typeface and includes 13,854 words.

2. The brief has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ William F. Lee

WILLIAM F. LEE
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

December 1, 2022