**Nos. 2022-1884, -1886**

*In the*

# United States Court of Appeals

*for the*

# Federal Circuit

WISCONSIN ALUMNI RESEARCH FOUNDATION,
*Plaintiff-Appellant*

v.

APPLE INC.,
*Defendant-Appellee*

*Appeal from the United States District Court for the Western District of Wisconsin, Case Nos. 3:14-cv-00062-wmc, 3:15-cv-00621-wmc · Honorable William M. Conley, Judge*

# REPLY BRIEF OF PLAINTIFF-APPELLANT WISCONSIN ALUMNI RESEARCH FOUNDATION

MORGAN CHU
ALAN J. HEINRICH
AMY E. PROCTOR
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
(310) 277-1010 Telephone
mchu@irell.com • aheinrich@irell.com
aproctor@irell.com

*Counsel for Plaintiff-Appellant, Wisconsin Alumni Research Foundation*

February 6, 2023

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. *WARF II* IS NOT PRECLUDED BY THE JUDGMENT IN *WARF I* .......... 3

A. Claim Preclusion Does Not Apply Because WARF's A9/A10 Claims Could Not Have Been Brought In *WARF I* .......... 3

B. Issue Preclusion Does Not Bar DoE In *WARF II* .......... 8

1. Apple Ignores The Supreme Court's Test For Whether Issues Are "Identical" .......... 8

2. Apple's Reliance On Non-Controlling Cases Is Unavailing .......... 9

C. *Nystrom* Does Not Support Preclusion Of *WARF II* .......... 12

D. The "*Kessler* Doctrine" Does Not Bar *WARF II* .......... 13

III. WARF NEVER WAIVED DoE IN *WARF I* .......... 15

A. This Court Changed The Construction Of "Particular" .......... 15

B. WARF Did Not Waive DoE Under This Court's New Construction .......... 17

C. This Court's Footnote And Prior Mandate Cannot Bar WARF From Proceeding On Unadjudicated Issues .......... 20

D. *Exxon* Establishes That WARF Is Entitled To Seek A New Trial On DoE .......... 22

IV. THE DISTRICT COURT'S IMPROPER *SUA SPONTE* CLAIM VITIATION RULING IS NOT AN ALTERNATIVE GROUND FOR AFFIRMANCE .......... 24

V. JUDICIAL ESTOPPEL DOES NOT BAR WARF'S DoE CLAIMS .......... 26

A. WARF's DoE Claim In *WARF I* Is Consistent With Its Prior Positions And Apple Is Not Prejudiced .......... 27

**Page**

B. Apple Cannot Assert Judicial Estoppel Based On Its Own Positions Regarding *WARF II* .......... 29

VI. CONCLUSION .......... 31

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re Airadigm Commc'ns, Inc.*,
616 F.3d 642 (7th Cir. 2010) ....................................................................31

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
672 F.3d 1335 (Fed. Cir. 2012) ................................................................3, 4

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
575 U.S. 138 (2015)........................................................................1, 8, 9, 10

*Boss Control, Inc. v. Bombardier Inc.*,
410 F.3d 1372 (Fed. Cir. 2005) ..................................................................18

*Brain Life, LLC v. Elekta Inc.*,
746 F.3d 1045 (Fed. Cir. 2014) ..................................................................14

*Cromwell v. Sac. County*,
94 U.S. 351 (1877).......................................................................................11

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
469 F. 3d 1005 (Fed. Cir. 2006) ...........................................................25, 26

*Eon Corp. IP Holdings v. Silver Spring Networks*,
815 F.3d 1314 (Fed. Cir. 2016) ..................................................................17

*Exxon Chem. Patents v. Lubrizol Corp.*,
137 F.3d 1475 (Fed. Cir. 1998) ............................................................*passim*

*Galderma Lab'ys, L.P. v. Amneal Pharms., LLC*,
337 F. Supp. 3d 371 (D. Del. 2018), *aff'd in part, rev'd in part*,
806 F. App'x 1007 (Fed. Cir. 2020) .......................................................9, 10

*Ienco v. Angarone*,
429 F.3d 680 (7th Cir. 2005) ................................................................20, 21

*Kessler v. Eldred*,
206 U.S. 285 (1907)...................................................................1, 13, 14, 15

**Page(s)**

*Laitram Corp. v. NEC Corp.*,
115 F.3d 947 (Fed. Cir. 1997) ....................................................................21, 22

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*,
140 S. Ct. 1589 (2020)....................................................................................7

*Manning v. City of Auburn*,
953 F.2d 1355 (11th Cir. 1992) ....................................................................1, 5

*Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*,
58 F.3d 616 (Fed. Cir. 1995) ..........................................................................7

*Mentor Graphics Corp. v. EVE-USA*,
Inc., 851 F.3d 1275 (Fed. Cir. 2017) ..............................................................3

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
2019 WL 4963253 (N.D. Cal. Oct. 8, 2019) ...................................................5

*New Hampshire v. Maine*,
532 U.S. 742 (2001)....................................................................................27, 28

*Nystrom v. Trex Co., Inc.*,
580 F.3d 1281 (Fed. Cir. 2009) ...................................................................12, 13

*Orexo AB v. Actavis Elizabeth LLC*,
371 F. Supp. 3d 175 (D. Del. 2019)...............................................................10

*Pandrol USA, LP v. Airboss Ry. Prods., Inc.*,
424 F.3d 1161 (Fed. Cir. 2005) ......................................................................18

*Pleming v. Universal-Rundle Corp.*,
142 F.3d 1354 (11th Cir. 1998) .......................................................................5

*Roboserve, Inc. v. Kato Kagaku Co.*,
121 F.3d 1027 (7th Cir. 1997) .......................................................................20

*SimpleAir, Inc. v. Google LLC*,
884 F.3d 1160 (Fed. Cir. 2018) ...............................................................1, 14, 15

*Simpson v. Merchants Recovery Bureau, Inc.*,
171 F.3d 546 (7th Cir. 1999) ..........................................................................24

**Page(s)**

*Toro Co. v. White Consol. Indus., Inc.*,
383 F.3d 1326 (Fed. Cir. 2004) ....................................................20, 21

*United States v. Hible*,
700 F.3d 958 (7th Cir. 2012) ....................................................18

*United States v. Int'l Bldg. Co.*,
345 U.S. 502 (1953)....................................................12

*United States v. Olano*,
507 U.S. 725 (1993)....................................................18

*ViaTech Techs. Inc. v. Microsoft Corp.*,
733 F. App'x 542 (Fed. Cir. 2018)....................................................18

*Voter Verified, Inc. v. Election Systems & Software LLC*,
887 F.3d 1376 (Fed. Cir. 2018) ....................................................10, 11

*WARF v. Apple Inc.*,
905 F.3d 1341 (Fed. Cir. 2018) ....................................................*passim*

# I. INTRODUCTION

Apple's brief consistently fails to grapple with controlling legal authority, while relying on irrelevant facts and argument. The issues here are straightforward.

For *WARF II*, claim preclusion does not apply because it is undisputed that the accused A9 and A10 processors did not exist when *WARF I* was filed, and WARF never actually asserted claims against those processors in *WARF I*. *See Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992) ("[C]laims that 'could have been brought' are claims in existence at the time the original complaint is filed or claims *actually* asserted by supplemental pleadings or otherwise in the earlier action."). Issue preclusion does not apply because the doctrine of equivalents ("DoE") and literal infringement are governed by different legal standards. Although Apple ignores this precedent, the Supreme Court has held that, for issue preclusion, "[i]ssues are not identical if the second action involves application of a different legal standard." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154 (2015). Apple's reliance on the *Kessler* doctrine also fails, because Apple's accused A9 and A10 sales all pre-date the *WARF I* non-infringement judgment, and this Court has "only" applied *Kessler* to bar claims challenging activities "after the judgment of noninfringement." *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1170 (Fed. Cir. 2018).

Accordingly, WARF's DoE claims in *WARF II* must proceed, regardless of the *WARF I* outcome.

For *WARF I*, Apple's entire argument depends on the false premise that this Court did not construe "particular" during the prior appeal. But Apple does not dispute that the district court concluded "particular's" construction permitted literal infringement, and this Court concluded it did not. This change in outcome ends the inquiry.

With respect to alleged waiver, this case is governed by *Exxon*: WARF "cannot be charged with having abandoned its doctrine-of-equivalents theory of liability by not submitting it to the jury or raising it on the previous appeal." *Exxon Chem. Patents v. Lubrizol Corp.*, 137 F.3d 1475, 1478-79 (Fed. Cir. 1998). As in *Exxon*, "[t]he question whether there could be doctrine-of-equivalents infringement under the claim construction adopted by this Court became a critical issue in the case only after this Court's decision on appeal." *Id.* at 1479. Had the district court's *Markman* order included a construction for the "particular" limitation that foreclosed literal infringement, WARF unquestionably would have tried DoE. But because the narrower construction was first adopted on appeal, that issue became "critical" only after this Court's decision. WARF is therefore entitled to a trial on DoE under this Court's new construction.

## II. *WARF II* IS NOT PRECLUDED BY THE JUDGMENT IN *WARF I*

### A. Claim Preclusion Does Not Apply Because WARF's A9/A10 Claims Could Not Have Been Brought In *WARF I*

Claim preclusion does not bar WARF's DoE claims against the A9/A10 processors for a straightforward reason. Those claims ***could not have been brought*** in *WARF I* because (i) they did not exist when WARF filed its complaint in *WARF I*; and (ii) at Apple's insistence, they were excluded from *WARF I*. Op.Br. 20-23. Apple's lengthy discussion comparing the *WARF I* and *WARF II* processors, Br. 34-37, is irrelevant: "Because the allegations could not have been brought in the first action, we need not determine whether the newly accused products are 'essentially the same' as the products litigated in the first action." *Mentor Graphics Corp. v. EVE-USA*, Inc., 851 F.3d 1275, 1299 (Fed. Cir. 2017).

This Court's law is also settled that WARF was not obliged to litigate claims against the A9/A10 processors in *WARF I*, because they indisputably accrued during the pendency of that lawsuit:

> While a party may seek to pursue claims that accrue ***during the pendency*** of a lawsuit adjudicated in that lawsuit, the party is not required to do so, and ***res judicata will not be applied to such accruing claims if the party elects not to have them included in the action***.

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1345 (Fed. Cir.

2012).[1] Apple does not contest that "res judicata will not be applied to such accruing claims" if the party does not consent to have the court adjudicate them in the first case. *Aspex*, 672 F.3d at 1345. Apple instead argues that claim preclusion bars *WARF II* because WARF "consented" to have its A9/A10 processor claims litigated in *WARF I*. Br. 39. Apple's argument fails on both the facts and the law.

Far from "consenting" to litigating its A9/A10 claims in *WARF I*, WARF was affirmatively prevented from doing so by Apple. Op.Br. 9-10, 20-22. In opposing WARF's motion for discovery on the A9/A10, Apple invited WARF to split its claims: "[t]o the extent WARF believes that it has a viable infringement case against the future processors after they are finalized and released, it may file a later infringement case as to those processors." Appx15096-15097. The district court ruled for Apple, stating that "we've got to draw the line somewhere…with the full recognition that maybe there will be a subsequent lawsuit involving [later processors] in the future." Appx15139-15140 at 32:22-33:1. The court emphasized that WARF is "not going to get [discovery] for the A9 and A10, because that's the line I'm drawing in the sand," and "I'll tell you right now I'm going to stick with the A7, A8 distinction for

---

[1] Emphases added unless noted.

trial." Appx15129, Appx15135, Appx15138; Appx15106-15107. *See MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 2019 WL 4963253, at *6 (N.D. Cal. Oct. 8, 2019) (patent owner did not improperly split claims because previous court denied patent owner's motion to compel discovery on additional products and limited action to "3 Design IDs that had always been at issue but nothing more").

The district court's "line in the sand" was never crossed. *WARF I* went to trial solely on the A7/A8 processors, and as Apple invited, WARF "file[d] a later infringement case as to [the A9/A10] processors." Appx15096-15097.

Apple also ignores the legal standard for establishing "consent" for claim preclusion purposes. "Consent" requires that the plaintiff asserted the later-accruing claims in a manner conforming with the Federal Rules of Civil Procedure, such as in a pleading or pretrial order. *See Manning*, 953 F.2d at 1360 ("[C]laims that 'could have been brought' are claims in existence at the time the original complaint is filed ***or claims actually asserted by supplemental pleadings or otherwise in the earlier action***."); *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1358 (11th Cir. 1998) (holding that to "'otherwise' assert a claim," the party's assertion "must conform with the rules of procedure").

Apple's two examples of purported "consent," both relating to proceedings after the *WARF I* trial, fall far short of this legal standard. First,

Apple argues that "Apple and the district court then invited WARF to include [the A9/A10] products in the *WARF I* judgment," and that WARF "agreed 'in substance' with that proposal." Br. 39. But in the very next sentence of the WARF brief Apple cites, WARF stated that "the most efficient path forward would be to enter final judgment regarding the A7, A8 and A8X chips now and to ***defer***, until after Apple's appeal is complete, ***the more extensive discovery that will be required for the [] later chips***." Appx7129. Apple also fails to mention that, in response, it told the district court that "Apple also ***does not oppose WARF's proposal to keep the two cases unconsolidated***…." Appx7155. Far from "consenting" to litigate the A9/A10 processors in *WARF I*, once Apple succeeded in excluding them, WARF insisted on litigating them separately.

Second, Apple argues that it "provided discovery" on the A9/A10 processors, "including source code," before judgment was entered in *WARF I*. Br. 40. But Apple provided this discovery months ***after*** the *WARF I* trial, in February-March of 2016. Appx7208. Apple then concludes with the non-sequitur, "[g]iven this history, WARF's infringement claims against the A9/A10 products plainly 'could have been brought' in *WARF I*." Br. 41. The fact that Apple waited until after the *WARF I* trial to provide discovery on the A9/A10 processors shows exactly the opposite: WARF could ***not*** have pursued its A9/A10 claims in *WARF I*. In any event, WARF indisputably never asserted

claims against the A9/A10 processors in *WARF I* in a pleading, pretrial order, or any other way conforming with the Federal Rules. WARF never crossed the district court's "line in the sand" excluding the A9/A10 from *WARF I* and hence did not "consent" to litigate its *WARF II* claims in *WARF I.* Those claims are not barred by claim preclusion.

Finally, the fallacy in Apple's position is underscored by the fact that, when claim preclusion applies, "the earlier suit's judgment prevents litigation of all grounds for, or defenses to, recovery," ***regardless of who won the earlier suit***. *Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 140 S. Ct. 1589, 1594 (2020). "If the plaintiff wins, the entire claim is merged in the judgment; the plaintiff cannot bring a second independent action for additional relief…." *Id.* at 1595. Thus, if claim preclusion actually applied to *WARF II*, WARF's claims against the A9/A10 processors would have "merged" in, and been extinguished by, the *WARF I* judgment ***even if that judgment had been affirmed***. *See Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 620 (Fed. Cir. 1995) (claim preclusion barred second suit after plaintiff won first suit). Yet after the *WARF I* trial, Apple never suggested that an affirmance of *WARF I* would bar WARF's claims against the A9/A10 processors in *WARF II*; on the contrary, Apple "agree[d] with the Court's proposal for awarding supplemental damages and ongoing royalties for the A9, A9X, and A10 chips at

the same rates awarded for the A7, A8, and A8X chips." Appx7148. Apple's own prior statements and conduct demonstrate that claim preclusion does not bar the *WARF II* claims.

### B. Issue Preclusion Does Not Bar DoE In *WARF II*

#### 1. Apple Ignores The Supreme Court's Test For Whether Issues Are "Identical"

Apple does not dispute that issue preclusion applies only if the issues litigated in the current and prior proceedings are identical. *B & B Hardware*, 575 U.S. at 153 ("[I]ssue preclusion applies where the issues in the two cases are indeed identical"). It is also undisputed that in *WARF I*, only literal infringement, not DoE, was "actually litigated." Op.Br. 30-32.

Apple's response turns entirely on its argument that "literal infringement and DoE infringement are not separate 'issues' for preclusion purposes." Br. 42. But Apple ignores controlling Supreme Court law. As WARF explained, the Supreme Court has held that, for issue preclusion purposes, "***[i]ssues are not identical if the second action involves application of a different legal standard***, even though the factual setting of both suits may be the same." *B & B Hardware*, 575 U.S. at 154.

Apple does not even respond to, much less dispute, WARF's showing that different legal standards apply to literal infringement and DoE. Op.Br. 28-30. Apple does not contend that WARF somehow mis-cited *B&B Hardware*, or that

its test does not apply here. Apple simply ignores it, citing no Supreme Court precedent on issue preclusion. Instead, Apple conclusorily asserts that literal infringement and DoE are not different "issues," just different "theories." Br. 42. But Apple cannot sidestep the Supreme Court's "different legal standards" test simply by labeling DoE a different "theory." Regardless of Apple's preferred label, DoE is a different issue from literal infringement for issue preclusion purposes ***precisely because*** it "involves application of a different legal standard." *B & B Hardware, Inc.*, 575 U.S. at 154. This Court should reject Apple's invitation to depart from Supreme Court precedent.

Apple's arguments are nonresponsive to the Supreme Court's test. Apple cites the generic proposition that "[i]nfringement requires that every limitation of a claim be met, either literally or equivalently," and also points to pleading conventions and references to DoE as a "theory" outside the context of issue preclusion. Br. 42-43. None of this changes the fact that literal infringement and DoE involve different legal standards, and therefore are different issues for issue preclusion purposes under controlling law.

#### 2. Apple's Reliance On Non-Controlling Cases Is Unavailing

Instead of applying Supreme Court precedent, Apple relies on non-controlling case law, such as *Galderma Lab'ys, L.P. v. Amneal Pharms., LLC*, 337 F. Supp. 3d 371 (D. Del. 2018), *aff'd in part, rev'd in part*, 806 F. App'x

1007 (Fed. Cir. 2020), which held that literal infringement and DoE are the same issue for issue preclusion purposes. *Id.* at 410. However, the district court did not address the Supreme Court's *B&B Hardware* decision nor apply its "different legal standards" test. The court based its ruling on the proposition that "invalidity, too, is a single issue for purposes of collateral estoppel." *Id.* But that proposition is far from settled. Indeed, a subsequent case from the same district rejected it following a careful analysis. *Orexo AB v. Actavis Elizabeth LLC*, 371 F. Supp. 3d 175, 184-87 (D. Del. 2019) ("[T]reating validity as a single issue as a matter of law conflicts with important policies underlying the issue preclusion doctrine and the federal patent laws"). The *Orexo* court explained that "[i]dentity of the issues [for estoppel purposes] is established by showing that the same general legal rules govern both cases," whereas "[t]he legal rules that govern the invalidity defenses available to defendants sued for infringement vary significantly." *Id.* at 185. Similarly, because the "legal rules that govern" literal infringement and DoE "vary significantly," they are separate issues for issue preclusion.

The *Orexo* court's holding finds support in this Court's case law. For example, *Voter Verified, Inc. v. Election Systems & Software LLC*, 887 F.3d 1376, 1383-84 (Fed. Cir. 2018), treated different invalidity theories as separate issues for issue preclusion purposes. Specifically, this Court held that "issue

preclusion does not apply…because the ***issue of patent eligibility under § 101*** was not actually litigated" in the prior case, even though other validity issues (including § 112 and § 103 issues) were litigated to judgment. *Id.* at 1384.

Finally, Apple contends that treating literal infringement and DoE as separate issues "would require parties to relitigate infringement of the same products covered by the same patents." Br. 46. But Apple conflates the policies underlying issue preclusion with those of claim preclusion. ***Claim preclusion*** protects against "relitigat[ing] infringement of the same products covered by the same patents," but does not apply here because the "same products" (A9/A10 processors) were not at issue in *WARF I*—Apple itself succeeded in excluding them.[2] Op.Br. 20-22. Precluding WARF from litigating infringement under DoE in *WARF II* would be contrary to the letter and spirit of issue preclusion because DoE was never actually litigated in *WARF I*. Unlike claim preclusion, issue preclusion demands that "the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined." *Cromwell v. Sac. County*, 94 U.S. 351, 353

[2] Apple suggests issue preclusion turns on whether the accused products in the later case are "essentially the same" as those in the earlier case. Br. 41-42. But that only holds if ***all of the other requirements of issue preclusion are also met***, including that the identical issue was actually litigated. Here, DoE was never actually litigated in *WARF I* and hence issue preclusion does not apply.

(1877). As the Supreme Court has explained, "unless we can say that [there was] an adjudication of the merits, the doctrine of [collateral] estoppel by judgment would serve an unjust cause; it would…forever foreclose inquiry into the merits." *United States v. Int'l Bldg. Co.*, 345 U.S. 502, 506 (1953).

### C. *Nystrom* Does Not Support Preclusion Of *WARF II*

Apple's reliance on *Nystrom*, which WARF discussed at length in its opening brief, is unavailing. *See* Op.Br. 24-27. Unlike WARF, Nystrom actually litigated DoE in his first case, which is why issue preclusion[3] applied. Specifically, after losing claim construction in the district court, Nystrom himself moved for summary judgment of non-infringement, which the district court found covered both literal infringement and DoE, so he could file an appeal challenging those constructions. *Nystrom v. Trex Co., Inc.*, 580 F.3d 1281, 1284 (Fed. Cir. 2009). This Court affirmed. *Id.* Nystrom then brought a second case under DoE against new products that were materially the same as the products in the first case. The district court dismissed the second suit, and this Court affirmed on preclusion grounds. *Id.* at 1284-86.

*Nystrom* does not apply here for a straightforward reason: DoE was actually litigated in *Nystrom I*, but not in *WARF I*. By moving for summary

[3] As explained, this Court has recharacterized *Nystrom* as involving principles of issue preclusion, not claim preclusion. Op.Br. 16, 26-27.

judgment of non-infringement under the district court's constructions, Nystrom conceded that the defendant's products did not infringe, either literally or under DoE, under those constructions. DoE was thus necessarily decided in Nystrom's first case. Indeed, if Nystrom had not stipulated to non-infringement covering DoE, this Court would not have had appellate jurisdiction. Here, in contrast, DoE was not actually litigated in *WARF I*.

Further, in *Nystrom II*, this Court precluded Nystrom's DoE claim after it had ***affirmed*** claim constructions under which Nystrom had already stipulated to no DoE infringement. WARF has done no such thing. WARF seeks to pursue DoE claims against processors not at issue in *WARF I* after this Court construed a key claim term for the first time on appeal and ***reversed*** the *WARF I* literal infringement judgment. Unlike Nystrom, WARF never had the opportunity to pursue a DoE claim under this Court's claim construction. Apple's conclusion that *Nystrom* is "on all fours with this case," Br. 32, is thus meritless.

### D. The "*Kessler* Doctrine" Does Not Bar *WARF II*

Apple's argument that *WARF II* is barred by the "*Kessler* doctrine" is contrary to this Court's precedent. This Court has "relied on the *Kessler* doctrine ***only*** to bar assertion of the claims at issue against essentially the same products ***made or sold after the judgment of noninfringement*** in the earlier case."

*SimpleAir*, 884 F.3d at 1170; *see also Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1054 (Fed. Cir. 2014) (*Kessler* doctrine is "temporally limited to acts occurring after a final judgment was entered in the first suit."). This temporal limitation is inherent in "*Kessler*'s rationale," as articulated by this Court,[4] which "is that the accused activity, ***held in the earlier case not to infringe the patent***, acquires a limited trade right to continue being practiced." *SimpleAir*, 884 F.3d at 1170. No such activity post-dating a judgment of non-infringement is at issue in *WARF II*, and hence *Kessler* does not apply.

*WARF II* was filed prior to trial in *WARF I.* Critically, all of Apple's infringement in *WARF II* occurred ***before*** any judgment of non-infringement was issued. The '752 patent expired in December 2016, well before this Court found no literal infringement in September 2018. Accordingly, *WARF II* does not accuse any activity post-dating the final judgment of non-infringement; *WARF II* necessarily only challenged acts of infringement prior to the '752 patent's December 2016 expiration. *Kessler* is therefore inapplicable.

---

[4] The *Kessler* doctrine is a patent-specific preclusion doctrine fashioned based on *Kessler v. Eldred*, 206 U.S. 285 (1907). As Judge O'Malley recognized in *Brain Life*, the Supreme Court "may have created the *Kessler* Doctrine as an exception to the strict mutuality requirement that existed at that time, rather than to espouse a specific doctrine of substantive patent law." 746 F.3d at 1057. Properly read, *Kessler* adds nothing to modern preclusion in light of the Supreme Court's subsequent rejection of the "strict mutuality requirement."

This Court has already rejected the same invitation to extend *Kessler* that Apple proposes here. In *SimpleAir*, Google, like Apple, sought to extend *Kessler* to "activity predating the earlier judgment." 884 F.3d at 1170. This Court rejected that invitation: "we have not applied the *Kessler* doctrine to bar a broader set of rights than would be barred by claim preclusion. ***Nor have we applied the Kessler doctrine to activity predating the earlier judgment***, as Google advocates here." *Id*. The temporal limit on *Kessler* is dispositive in this case. Apple's *Kessler* argument should be rejected.

## III. WARF NEVER WAIVED DoE IN *WARF I*

Turning to *WARF I*, this Court's *Exxon* decision establishes that WARF is entitled to a trial on its unadjudicated DoE claim. Apple's waiver arguments cannot be squared with this Court's clear direction that a plaintiff "cannot be charged with having abandoned its doctrine-of-equivalents theory of liability by not submitting it to the jury or raising it on…appeal." *Exxon*, 137 F.3d at 1478-79. The district court erred in finding otherwise, and abused its discretion in denying WARF's motion for a new trial on DoE.

### A. This Court Changed The Construction Of "Particular"

There can be no doubt that the construction of "particular" changed on appeal. Before appeal, the district court confirmed that "particular's" plain and ordinary meaning included "a prediction associated with a single load

instruction, ***albeit one that is 'dynamic.'***"[5] Appx15298. In other words, a prediction could be associated with one load instruction at one time, and then associated with a different load instruction at another time. WARF's and the district court's view of plain and ordinary meaning, including the reference to "dynamic" association between predictions and load instructions, encompassed the accused products' operation and supported literal infringement. Appx15461.

During the prior appeal, this Court directly addressed and resolved a claim construction dispute. Starting in oral argument, this Court questioned Apple as to why it had "***never asked for***" the construction it then sought, and repeatedly distinguished between Apple's requests for a "single" instruction and an instruction for "one and only one," stating that "***single is very different from one and only one***." Appx15384 (Recording at 09:00-09:36). Then in its opinion, this Court explained that "the district court…stated that a reasonable jury could conclude that a prediction was associated with a particular load instruction ***even if that same prediction may be associated with other load instructions***." *WARF v. Apple Inc.*, 905 F.3d 1341, 1347 n.6 (Fed. Cir. 2018). Ultimately, however, this Court held that "[i]n our view, the plain meaning of 'particular'…requires the prediction to be associated with a *single* load instruction. A prediction that is

[5] Apple's brief misleadingly close-crops this quote to omit the bolded language. Br. 6, 26.

associated ***with more than one load instruction*** does not meet this limitation." *Id.* at 1348. This Court therefore expressly rejected WARF's and the district court's view that the particular limitation allowed a prediction to "be associated with other load instructions." *Id.* at 1347 n.6. There is no credible argument that this Court's opinion applied the same meaning of "particular" as the district court in reversing the literal infringement judgment.

Apple attempts to avoid this obvious conclusion by characterizing both the district court's and this Court's constructions as the term's "plain and ordinary meaning." But all claim construction is an exercise in defining a term's "plain and ordinary meaning." If two courts define that meaning differently, with one court concluding it permits literal infringement, and a second court finding (on the same facts) that it forecloses literal infringement, then the "plain and ordinary meaning" necessarily has changed. *See, e.g.*, *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1318 (Fed. Cir. 2016) (explaining a term can have "more than one 'ordinary' meaning").

### B. WARF Did Not Waive DoE Under This Court's New Construction

This changed construction is fatal to Apple's waiver argument, which rests entirely on an agreement WARF and Apple entered into in 2015, years

before this Court adopted a narrower construction of "particular." As Apple explains, waiver is the "***intentional*** relinquishment or abandonment of a ***known*** right." Br. 21 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). This Court has already concluded that a patent owner cannot "intentionally" abandon a "known" right under a specific claim construction before that construction is ever adopted. *See Exxon*, 137 F.3d at 1478-79.

The only cases Apple cites to support its waiver theory are run-of-the-mill decisions with no relevance to the unique *Exxon*-like facts here. *See United States v. Hible*, 700 F.3d 958, 962 (7th Cir. 2012) (affirming waiver after defendant "affirmatively withdrew all objections," noting no changed circumstances); *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 424 F.3d 1161, 1167 (Fed. Cir. 2005) (affirming waiver of obviousness when defendant failed to "disclose this prior art," noting no changed circumstances). Apple also cites inapposite cases where a patentee failed to ***ever*** "articulate a theory of infringement under the doctrine of equivalents." *ViaTech Techs. Inc. v. Microsoft Corp.*, 733 F. App'x 542, 554 (Fed. Cir. 2018). *See also Boss Control, Inc. v. Bombardier Inc.*, 410 F.3d 1372, 1380 (Fed. Cir. 2005). Here, Apple does not dispute that WARF adequately raised and preserved DoE through at least the eve of trial.

Apple half-heartedly attempts to distinguish *Exxon* by arguing that here, unlike in *Exxon*, WARF abandoned DoE for reasons unrelated to claim construction. But this ignores the facts. *See* Op.Br. 36-44. WARF and Apple agreed that at the 2015 liability trial, WARF would not present evidence on DoE under the then-controlling constructions, and Apple would not present evidence of its own irrelevant patent. Appx15294. Both parties abided by, and obtained the benefit of, this agreement, which was entered into when the term "particular" had a broad plain and ordinary meaning that encompassed literal infringement. Appx6824-6827; Appx6838. *See* Appx15289-15294; Appx15298 ("[C]laim 1 discloses a prediction associated with a single load instruction, ***albeit one that is 'dynamic***.'"). On appeal, this Court construed "particular" to foreclose literal infringement. *WARF*, 905 F.3d at 1348. Apple cannot meaningfully dispute that if this Court's narrower construction had been in place at the time of trial, WARF would have pursued its DoE claim—indeed, it would have had to. Op.Br. 36-37, 40-44. The governing construction in 2015 was therefore fundamental to WARF's agreement not to present DoE at that time. It was only in 2018 that this Court narrowed "particular's" construction, and Apple does not even attempt to argue that any of WARF's post-appeal actions waived DoE under the new construction.

### C. This Court's Footnote And Prior Mandate Cannot Bar WARF From Proceeding On Unadjudicated Issues

After failing to demonstrate waiver, Apple argues that WARF's ability to pursue DoE post-appeal was already decided by this Court, either through a footnote or through silence. Both arguments fail, and both expose legal errors in the district court's opinion that this Court reviews *de novo*.

***First***, this Court's footnote acknowledging that WARF did not present DoE at the 2015 trial is not the "law of the case" because it was neither litigated nor necessarily decided.

The law of the case doctrine is a "rule of practice" that ensures "once an issue is ***litigated***," the parties and other courts follow those prior decisions. *Ienco v. Angarone*, 429 F.3d 680, 684 (7th Cir. 2005). To be incorporated into the law of the case, the issue must have been actually and necessarily decided, not merely alluded to. *Roboserve, Inc. v. Kato Kagaku Co.*, 121 F.3d 1027, 1031 (7th Cir. 1997). Dicta and issues neither presented nor decided are not incorporated into the law of the case. *Toro Co. v. White Consol. Indus., Inc.,* 383 F.3d 1326, 1336 (Fed. Cir. 2004).

During the first appeal, this Court never considered whether WARF had waived its DoE claims under any construction, much less under this Court's new construction. *See* Appx15463-15469. In fact, nothing about DoE was litigated or decided as part of the first appeal, which was limited to literal infringement. *Id.*

This Court simply noted that limited scope by mentioning, in a footnote, that DoE was not part of Apple's appeal because it had not been presented at the 2015 trial. *See WARF,* 905 F.3d at 1347 n.5 ("WARF abandoned its theory of infringement under the doctrine of equivalents before trial, and has proceeded only on a theory of literal infringement."). But the parties never raised, and never had reason to raise, whether the scope of the 2015 trial somehow effected a waiver of DoE under a new claim construction. *See* Appx15463-15469. Thus, this footnote did not explicitly or implicitly "decide" any issue. *See Ienco*, 429 F.3d at 684 ("In *Ienco IV*, we stated ***in dicta*** that Ienco's false arrest claim was time-barred by two years…[t]he issue of whether Ienco's false arrest was time-barred was never litigated before the district court or this court"); *Laitram Corp. v. NEC Corp*., 115 F.3d 947, 949 (Fed. Cir. 1997) (declining to apply law of the case to issues that "had neither been appealed, nor briefed nor argued by either party").

***Second***, this Court's silence in its 2018 mandate on the possibility of a new trial under DoE did not foreclose such a trial. This Court directly addressed this question in *Exxon*, explaining that although its earlier mandate similarly did not remand for a new trial on DoE, "[u]nder the general rule that an appellate mandate governs only that which was actually decided, the district court was [] free to consider Exxon's motion for a new trial." 137 F.3d at 1478. The same is

true here. Apple does not dispute that the issues it raised in the previous appeal were limited to literal infringement. Accordingly, so was the 2018 appellate mandate. *See, e.g.*, *Laitram*, 115 F.3d at 952-53.

Apple next points to WARF's request for rehearing, which sought an explicit remand on DoE. But again, Apple's argument is directly contradicted by *Exxon*. The defendant there similarly argued Exxon was foreclosed from seeking a DoE trial when this Court denied its request for rehearing, wherein "Exxon asked for a clarification of its right to move for a new trial under the doctrine of equivalents." 137 F.3d at 1479. This Court rejected that argument, holding that "[n]o inferences can be drawn from the court's silence in response to Exxon's request for clarification." *Id.* The same is true here. Indeed, "it would be a mistake to conclude that a court's non-response to an argument made in a rehearing petition necessarily means that the court has rejected that argument on the merits." *Id.*

### D. *Exxon* Establishes That WARF Is Entitled To Seek A New Trial On DoE

Apple attempts to distinguish *Exxon* almost exclusively on the flawed premise that this Court did not change the construction of "particular." Br. 28. But as discussed *supra,* section III.A, Apple is incorrect. Based only on its narrower view of "particular," this Court reversed the judgment on literal infringement.

After failing to rewrite this history, Apple spends barely a page addressing *Exxon*, largely rehashing its waiver and "law of the case" arguments. This cursory analysis of *Exxon* is telling—WARF's circumstances are completely analogous to *Exxon*, which dictates that WARF be allowed to pursue its DoE claims under this Court's new construction. In *Exxon,* the plaintiff pleaded and developed both literal and equivalent infringement theories. *Exxon,* 137 F.3d at 1477. Then at trial, Exxon ultimately presented only literal infringement, and as in *WARF I*, the jury found for Exxon. On appeal, this Court applied a new construction and ***reversed*** the judgment of literal infringement—just as it did in *WARF I. Id.*; *WARF*, 905 F.3d at 1343. In reversing that judgment, this Court was silent as to further proceedings and denied a motion for rehearing. After remand, Exxon sought and was denied a new trial on infringement under DoE, but on a second appeal, this Court reversed again, agreeing that its earlier appellate mandate on literal infringement did not foreclose a DoE trial. 137 F.3d at 1477.

This Court also expressly rejected an argument that Exxon allegedly "abandoned its doctrine-of-equivalents theory of liability by not submitting it to the jury or raising it on the previous appeal." *Id.* at 1478-79. Instead, Exxon could not have waived its DoE claims because "[t]he question whether there could be doctrine-of-equivalents infringement ***under the claim construction***

***adopted by this court*** became a critical issue in the case ***only after this court's decision on appeal***." *Id.* at 1479.

Apple makes no meaningful attempt to distinguish these facts, and it cannot do so. WARF's DoE claims under this Court's narrower construction became a "critical issue" only after this Court's "decision on [the first] appeal." *Id.* Therefore WARF's decision not to pursue DoE at the 2015 trial, under a broader governing claim construction, was not a waiver or abandonment of DoE under the new construction. As explained *supra*, *Exxon* also disposes of Apple's arguments with respect to whether WARF is foreclosed by the 2018 appellate mandate or denial of rehearing. *Exxon* is definitive that WARF is not. *E.g.*, 137 F.3d at 1479. Instead, WARF is entitled to a trial on DoE.

## IV. THE DISTRICT COURT'S IMPROPER *SUA SPONTE* CLAIM VITIATION RULING IS NOT AN ALTERNATIVE GROUND FOR AFFIRMANCE

Apple admits that the "district court raised claim vitiation *sua sponte*," without providing WARF an opportunity to be heard. Br. 54. The district court thus "lack[ed] the power to grant summary judgment *sua sponte*" because WARF did not have "proper notice that the district court was considering entering summary judgment" nor "a fair opportunity to present evidence in opposition." *Simpson v. Merchants Recovery Bureau, Inc.*, 171 F.3d 546, 549 (7th Cir. 1999). Apple does not argue otherwise; instead, it submits that "WARF

has had a full opportunity to brief the subject to this Court." Br. 53. That is plainly untrue. Because it was denied the opportunity to make its district court record, WARF briefed vitiation to this Court on an incomplete record, without the benefit of the fact and expert evidence it would have marshaled had it been provided fair notice. Briefing to this Court is no substitute for the opportunity to present evidence in opposition to a district court's entry of summary judgment. Nor is it this Court's role to weigh competing summary judgment arguments in the first instance.

Apple attempts to gloss over the district court's factual and legal errors by refusing to engage with WARF's opening brief. Apple does not even address (and thus does not dispute) WARF's explanation of how the district court mischaracterized the DoE case WARF would present to the jury. *See* Op.Br. 47-48. In lieu of responding to WARF's detailed technical DoE arguments, Op.Br. 49-56, Apple argues that DoE is somehow foreclosed by this Court's prior ruling of no ***literal infringement***. Br. 52-53. That is not the law. "[A]ny analysis of infringement under the doctrine of equivalents *necessarily* deals with subject matter that is…not included in the literal scope of a claim." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F. 3d 1005, 1018 (Fed. Cir. 2006) (emphasis in original). Foreclosing DoE "whenever a claim limitation does not literally read on an element of an accused device" "would swallow the doctrine

of equivalents entirely." *Id.* Finally, Apple ignores that claim vitiation turns on whether the patentee's DoE claim is supported by substantial evidence—this is ultimately a jury issue; it is not a threshold legal issue. Op.Br. 48.

Apple notes that, in its processors, "multiple load instructions ***may*** hash to the same load tag." Br. 50. Although that abstract possibility of association led the *WARF I* court to reverse on literal infringement, WARF's DoE claim is based on how load tags work ***in the actual operation of Apple's LSD predictor***. In practice, 99.9% of load tags and corresponding predictions are associated only with a single load instruction. Appx10500-10502; Appx11238-11240. Thus, the DoE question WARF would submit to the jury is whether, in the actual operation of Apple's processors, a prediction associated with a load tag that in fact matches with only one load instruction processed by the CPU during the prediction's lifespan (which is undisputedly 99.9% of all load tags) is the equivalent of a load tag associated with a "particular" load instruction. Because it decided the issue *sua sponte*, the district court never even considered WARF's actual DoE claim. The district court's improper *sua sponte* ruling is not an alternative ground for affirmance.

## V. JUDICIAL ESTOPPEL DOES NOT BAR WARF'S DoE CLAIMS

Apple is wrong that judicial estoppel bars WARF from pursuing DoE in either *WARF I* or *WARF II*. Judicial estoppel has three requirements: (1) "a

party's later position must be 'clearly inconsistent' with its earlier position"; (2) "the party has succeeded in persuading a court to accept that party's earlier position"; and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Br. 55 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)). Not one of these requirements is met here. WARF has never taken "clearly inconsistent" positions, and would not derive any "unfair advantage" from being able to try its DoE claims under this Court's new construction for the first time.

### A. WARF's DoE Claim In *WARF I* Is Consistent With Its Prior Positions And Apple Is Not Prejudiced

Apple contends that WARF agreed (in 2015) to abandon DoE to exclude Apple's patent, and that after the *WARF I* appeal, "WARF took the opposite position when it attempted to revive its DOE theory." Br. 55-56. But Apple plainly cannot establish judicial estoppel here. ***First***, there is no clear inconsistency. WARF never agreed not to assert DoE under this Court's new controlling construction, which did not exist in 2015. WARF and Apple's agreement regarding DoE for the *WARF I* trial under a completely different claim construction cannot be inconsistent with WARF's position that it is entitled to assert DoE under the new construction of "particular."

***Second***, Apple is incorrect that WARF "succeeded in persuading [the] court to accept" its position. *New Hampshire*, 532 U.S. at 750. WARF moved *in limine* to exclude evidence of Apple's later-filed patent, but the district court ***denied*** WARF's motion, and the issue was resolved by the parties' agreement. Appx15294.

***Third***, Apple has not identified any "unfair advantage" to WARF if a trial on DoE were to be allowed. Apple argues only that a DoE trial would provide "WARF a 'do over' on infringement." Br. 56. But a trial on an infringement theory ***never before litigated***—under a new claim construction—is not a "do over."

Indeed, if Apple had timely sought and received the construction ultimately adopted by this Court, WARF would have tried DoE infringement under that construction. And it likely would have prevailed—Apple has practically admitted that any difference between its products and a system requiring "unique" associations between predictions and single load instructions is insubstantial. *See, e.g.*, Appx11239-11240 at 223:21-224:1 (Apple's expert agreeing that "the chances in which a prediction will be associated with more than one load instruction is .0 – .0.1 percent."). But because Apple did not ask the district court to construe "particular" before trial, WARF never had a chance to argue DoE under that construction.

This situation is therefore of Apple's own creation—Apple failed to timely request a claim construction for "particular," and then appealed to this Court, arguing that "a new trial is required" because the "particular" limitation was not construed below. Appx15463-15475. Now that it has succeeded in changing the standard for infringement, Apple should be held to its representation that a "new trial is required" on its new construction.

### B. Apple Cannot Assert Judicial Estoppel Based On Its Own Positions Regarding *WARF II*

Apple's judicial estoppel arguments for *WARF II* similarly fail to satisfy any of the three factors.

***First***, the only statements Apple points to are fully consistent with WARF's current positions. Apple focuses primarily on WARF's statement that "should Apple prevail on appeal, there ***may*** be no need for [damages] calculations" on the A9 and A10 processors. Appx7130. But this addresses just one of many outcomes—one that never came to be, because Apple did not fully prevail on appeal when this Court rejected Apple's invalidity arguments. *WARF*, 905 F.3d at 1350. Contrary to Apple's suggestions, WARF never made any representation that *WARF II* might be limited to an accounting ***regardless*** of the outcome on appeal.

Similarly, Apple cites a statement (from the same document) that "***Apple represented*** that it would not dispute that the A9, A9X, and A10 chips are not

more than colorably different." Appx7129-7130. As this broader quote (that Apple omitted) shows, this statement was made by ***Apple***, not WARF. It is also not inconsistent with WARF's positions. WARF's claim preclusion arguments are based on WARF's inability to bring its A9/A10 claims in *WARF I*, and WARF's issue preclusion arguments are based on DoE never being actually litigated or decided. Neither requires the later chips to be meaningfully different. Apple also quotes statements about applying the same royalty to Apple's newer chips. And if WARF had won on appeal, then the same royalty rate could have been applied to those processors as Apple requested. But that unrealized possibility is not "clearly inconsistent" with requesting a new trial on a separate infringement issue under a new construction.

***Second***, these allegedly "inconsistent" statements were the result of the district court ***siding with Apple***. During post-trial briefing, it was ***Apple*** who sought "to include its products containing the A9 and A9x chips in the supplemental damages award." Appx15362. WARF disagreed and maintained its position that the later processors should remain in *WARF II*. *Id.* The district court initially sided with Apple and ordered WARF to file the brief Apple cites. Appx15362-15363; Appx7129-7131. Even so, WARF maintained that *WARF II* should remain separate. Appx7130. WARF therefore never persuaded the district court to adopt any allegedly inconsistent position.

***Third***, Apple's argument separately fails because Apple has not suffered any prejudice. The cases Apple cites allege actual prejudice, to the tune of "a king's ransom." *In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 663 (7th Cir. 2010). By contrast, Apple fails to identify ***any prejudice whatsoever***. Nor can it, because the district court adopted ***Apple's***, not WARF's, positions.

## VI. CONCLUSION

WARF respectfully requests that this Court vacate the judgments in *WARF I* and *WARF II* and remand for further proceedings on WARF's DoE claims.

Dated: February 6, 2023

*<u>/s/ Amy E. Proctor</u>*

Amy E. Proctor
Irell & Manella LLP
1800 Avenue of the Stars, Ste 900
Los Angeles, CA 90067
(310) 277-1010
aproctor@irell.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 6th day of February 2023, I filed the foregoing Reply Brief of Plaintiff-Appellant Wisconsin Alumni Research Foundation with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

Dated: February 6, 2023

*/s/ Amy E. Proctor*

Amy E. Proctor
Irell & Manella LLP
1800 Avenue of the Stars, Ste 900
Los Angeles, CA 90067
(310) 277-1010
aproctor@irell.com

## CERTIFICATE OF COMPLIANCE

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because:

1. The filing has been prepared using a proportionally spaced typeface and includes 6,999 words.

2. The filing has been prepared in proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Dated: February 6, 2023

*<u>/s/ Amy E. Proctor</u>*

Amy E. Proctor
Irell & Manella LLP
1800 Avenue of the Stars, Ste 900
Los Angeles, CA 90067
(310) 277-1010
aproctor@irell.com